### S08G1934. AMERICAN MULTI-CINEMA, INC. et al. v. BROWN et al.
#### (679 SE2d 25)

SEARS, Chief Justice.

Accidents happen. But many accidents can be prevented, or at least rendered substantially less likely to occur. An owner or occupier of land has a legal duty, enforceable by lawsuit, to exercise ordinary care to keep and maintain its premises and the approaches in a condition that does not pose an unreasonable risk of foreseeable harm to the invited public. American Multi-Cinema, Inc. (AMC) used a warning device to prevent one type of accident (slipping on spills) that ended up causing a different type of accident (tripping over a "Wet Floor" sign lying flat on the ground). We agree with the Court of Appeals that the plaintiffs came forward with sufficient evidence to send this case to a jury to determine whether AMC breached its duty of care to the public under the totality of the circumstances. Accordingly, we affirm the Court of Appeals' judgment reversing the trial court's grant of summary judgment to AMC.

1. Business was brisk on Christmas Day 2003 at AMC's 24-plex movie theater at Southlake Mall. Nancy Sue Brown took her daughter and grandchildren to see the Steve Martin remake of "Cheaper by the Dozen," and they were joined by a friend and her grandchildren. The auditorium was filled to capacity, and when the movie ended, the crowd rose from their seats and headed towards the exit doors en masse. Brown's friend was at the front of the crowd with all the grandchildren heading towards the bathroom, while Brown and her daughter were further back in the middle of the crowd.

Unbeknownst to Brown, mere minutes before the movie ended, an AMC employee, following company policy, set up a commonplace, A-frame "Wet Floor" sign over a small spill 10 to 20 paces outside the auditorium door. By the time Brown reached the sign, it had fallen over and was lying flat on the floor. Brown's vision was obscured by the mass of people around her, and she did not see the sign until it was too late. As her foot passed over it, her toe caught in the handle, and she fell headlong to the floor. Brown, who had recently undergone back surgery, was seriously injured in the resulting fall.

Brown and her husband filed suit against AMC for negligence

and loss of consortium on a premises liability theory.[1] AMC moved for summary judgment, claiming: (1) it is undisputed that the sign was initially set up correctly; (2) the Browns produced no evidence that AMC knew the sign had fallen down before Brown tripped on it; and (3) the Court of Appeals held in *Warberg v. St. Louis Bread Co.* and *Freeman v. Wal-Mart Stores, Inc.* that a "Wet Floor" sign is not a tripping hazard as long as it was set up properly even if it is lying flat on the floor by the time the plaintiff reaches it, even if it was placed in a highly trafficked area, and even if the defendant knew that signs of this type frequently end up falling over when they come into contact with moving crowds.[2] AMC argued that allowing the Browns' suit to go forward would put retailers in an untenable position, because longstanding Georgia case law encourages the use of "Wet Floor" signs to mark spills. AMC also noted its extensive employee training program with its focus on customer safety and the proper procedure for handling spills.

In response, the Browns produced expert testimony that the type of "Wet Floor" sign Brown tripped over collapses easily when it comes into contact with pedestrian traffic; it is standard knowledge in the retail industry that this type of sign tends to collapse, creates a tripping hazard when it does, and should therefore not be placed in the path of oncoming crowds; and there were safer, readily available alternatives AMC could have employed to address the spill, such as using a sturdier type of "Wet Floor" sign or a design less prone to collapsing, or requiring employees to dry spills in heavily trafficked areas completely, thereby obviating the need for a warning device altogether. The Browns also challenged AMC's interpretation of *Warberg* and *Freeman*.

The trial court adopted AMC's reading of *Warberg* and *Freeman* and granted summary judgment to AMC. The Browns appealed, and the Court of Appeals reversed.[3] The Court of Appeals explained that *Warberg* and *Freeman* did not hold, as a matter of law, that "Wet Floor" signs set up over spills can never be the basis for a premises liability claim, regardless of where they are placed. The Court of Appeals concluded that the evidence, viewed in the light most favorable to the Browns, could support a factual finding that the crowd blocked Brown's view of the floor, rendering the fallen "Wet Floor" sign useless as a warning device. The Court of Appeals held

---

[1] The complaint also named several individual AMC employees as defendants. However, they were later dismissed, and the suit is now solely against AMC.

[2] *Warberg v. St. Louis Bread Co.*, 255 Ga. App. 352 (565 SE2d 561) (2002); *Freeman v. Wal-Mart Stores, Inc.*, 281 Ga. App. 132 (635 SE2d 399) (2006).

[3] *Brown v. American Multi-Cinema, Inc.*, 292 Ga. App. 505 (664 SE2d 838) (2008).

that if the jury so found, it could hold AMC liable for premises liability for breaching its duty to exercise ordinary care to protect the safety of the invited public. We granted AMC's petition for a writ of certiorari.

2. Premises liability lies at the intersection of tort law and property law. To recover on a theory of premises liability, a plaintiff must show injury caused by a hazard on an owner or occupier of land's premises or approaches that the owner or occupier should have removed in the exercise of ordinary care for the safety of the invited public.[4] When a premises liability cause of action is based on a "trip and fall" or "slip and fall" claim — and the lion's share of premises liability cases are[5] — we have refined this general test down to two specific elements. The plaintiff must plead and prove that: (1) the defendant had actual or constructive knowledge of the hazard; and (2) the plaintiff, despite exercising ordinary care for his or her own personal safety, lacked knowledge of the hazard due to the defendant's actions or to conditions under the defendant's control.[6]

The proper application of summary judgment principles to premises liability cases has caused the courts much consternation. We recounted this troubled history in our seminal 1997 decision in *Robinson v. Kroger Co.*[7] We described the "pendulum-like" development of Georgia law, reporting that, for a time, there seemed to be a drift towards allowing every "slip and fall" or "trip and fall" case, no matter how groundless, to proceed to a jury trial. We had implemented a course correction in 1980 in *Alterman Foods, Inc. v. Ligon*. Unfortunately, we overshot the mark, and it became a rarity for a "slip and fall" or "trip and fall" case to survive a defendant's motion for summary judgment.

In *Robinson*, we instituted a second course correction, this time in the opposite direction. We reaffirmed *Alterman's* two-part test for premises liability in "slip and fall" and "trip and fall" cases but adjusted the burdens of production on summary judgment to more accurately reflect the doctrinal underpinnings of premises liability theory and to restore the jury to its rightful role in elaborating the content of a merchant's duty of care to the invited public. After *Robinson*, to survive a motion for summary judgment, a plaintiff must come forward with evidence that, viewed in the most favorable

---

[4] See OCGA § 51-3-1 ("Where an owner or occupier of land, by express or implied invitation, induces or leads others to come upon [the] premises for any lawful purpose, he [or she] is liable in damages to such persons for injuries caused by his [or her] failure to exercise ordinary care in keeping the premises and approaches safe.").

[5] Charles R. Adams, Ga. Law of Torts § 4-6 (a).

[6] *Alterman Foods, Inc. v. Ligon*, 246 Ga. 620 (272 SE2d 327) (1980).

[7] *Robinson v. Kroger Co.*, 268 Ga. 735 (493 SE2d 403) (1997).

light, would enable a rational trier of fact to find that the defendant had actual or constructive knowledge of the hazard. At that point, the burden of production shifts to the defendant to produce evidence that the plaintiff's injury was caused by his or her own voluntary negligence (intentional disregard of a known risk) or causal negligence (failure to exercise ordinary care for one's personal safety). If the defendant succeeds in doing so, the burden of production shifts back to the plaintiff to come forward with evidence that creates a genuine dispute of fact on the question of voluntary or causal negligence by the plaintiff or tends to show that any such negligence resulted from the defendant's own actions or conditions under the defendant's control.[8]

We concluded *Robinson* with the following admonition:

> In sum, we remind members of the judiciary that the "routine" issues of premises liability, i.e., the negligence of the defendant and the plaintiff, and the plaintiff's lack of ordinary care for personal safety are generally not susceptible of summary adjudication, and that summary judgment is granted only when the evidence is plain, palpable, and undisputed.[9]

To put it in more concrete terms, this means that issues such as how closely a particular retailer should monitor its premises and approaches, what retailers should know about the property's condition at any given time, how vigilant patrons must be for their own safety in various settings, and where customers should be held responsible for looking or not looking are all questions that, in general, must be answered by juries as a matter of fact rather than by judges as a matter of law.

3. With these background principles in mind, we turn to the present case. Only the first prong of the two-part *Alterman-Robinson* test is at issue.[10] Thus, the question is whether the Browns came forward with evidence that, viewed favorably, would enable a rational jury to find AMC had actual or constructive knowledge of the tripping hazard that injured Brown.

AMC claims it is undisputed that it did not have "actual knowledge" of the hazard that caused Brown's injury. That is not entirely correct. What is undisputed is that none of AMC's employees

---

[8] *Robinson*, 268 Ga. at 746-749.

[9] *Robinson*, 268 Ga. at 748.

[10] See Daniel F. Hinkel, Pindar's Georgia Real Estate Law and Procedure with Forms, § 11-57 (6th ed.) (describing *Alterman* and *Robinson* as the "two key cases which establish Georgia law for 'slip and fall' premises liability").

deposed by the Browns personally saw the "Wet Floor" sign after it fell down but before Brown tripped on it. AMC concedes, however, that one of its employees set up the sign in the location where Brown encountered it in accordance with express company policy and training. In other words, AMC claims that while it knew the *sign* was there, it did not know the sign was a *hazard*, and ipso facto, it had no "actual knowledge" of the hazard that injured Brown.

We are not persuaded. AMC explicitly instructed its employees to place the obstacle that tripped up Brown on the floor over any spill not completely dry, even if that meant putting it on the floor directly in the path of a large, oncoming crowd of pedestrians. The Browns posit that using this type of sign in areas trafficked by hordes of customers in and of itself creates an unreasonable risk of foreseeable harm to the public in the form of tripping hazards. Under the Browns' theory of premises liability, it is irrelevant that none of AMC's employees saw the sign after it was knocked over; their whole point is that AMC breached its duty of care by knowingly setting up the sign on the floor when it knew the packed audience would be spilling into the hallway any minute.

If the Browns' theory of recovery is viable, AMC had "actual knowledge" of the "hazard" the moment it had its employee place the sign on the floor in the path of the soon-to-be exiting crowd, even if the sign was set up in the correct manner. The Browns came forward with evidence that signs of this type tend to collapse on contact with moving crowds, constitute a tripping hazard when knocked over, and ought not be used in areas trafficked by dense concentrations of people. The decision whether to recognize the Browns' theory of recovery as valid under Georgia premises liability law is precisely the type of legal policy judgment we instructed in *Robinson* must be left to a jury to decide in light of all the attendant circumstances. It is one of the "routine" issues of premises liability — "the negligence of the defendant" — that is "generally not susceptible of summary adjudication" unless the "plain, palpable, and undisputed" evidence requires otherwise. Given the Browns' evidence of the risk posed by this particular type of "Wet Floor" sign when used in areas traversed by large concentrations of customers in motion, we cannot say, as a matter of law, that AMC fulfilled its legal duty to avoid creating an unreasonable risk of foreseeable harm to the public.

AMC also argues that the Browns produced no evidence that the AMC employees in the area "could have easily seen the substance [i.e., the fallen sign] and removed the hazard" and thus failed to show "constructive knowledge" of the tripping hazard. Given our holding with respect to "actual knowledge," we need not address this argument in detail. Suffice it to say, however, that we are not inclined

to interpret the concept of "constructive knowledge" in such a way that it would exonerate AMC's employees for failing to notice and remedy the tripping hazard when their excuse — the inability to see it due to the large mass of people pouring out of the theater — is the same reason Brown could not see the hazard and take actions to avoid it. Indeed, from their vantage point outside the crowd, AMC's employees may well have been in a superior position to see the tripping hazard than Brown was as she approached it in the tightly packed crowd. An invitee like Brown "is not bound to avoid hazards not usually present on the premises and which the invitee, exercising ordinary care, did not observe," nor is an invitee "required, in all circumstances, to look continuously at the floor, without intermission, for defects."[11] A jury could well find that, as between AMC and Brown, AMC was in the better position to ascertain the risks to the public of the various approaches to addressing spills, and that on these facts, AMC should be held liable for premises liability.

AMC insists the Court of Appeals' judgment puts it in an untenable position because it can never know if a future jury will deem a crowd to have been "too big" to safely use the type of "Wet Floor" sign that injured Brown. However, this problem is an inherent part of our system of trial by jury in civil cases. In essence, AMC is asking us to create a special exception to ordinary premises liability law for "Wet Floor" signs given their ubiquitous use in society and their known value in avoiding "slip and fall" injuries caused by spills. However, we are aware of no rule of tort law, and AMC has pointed us to none, that automatically immunizes merchants from suits for damages for injuries caused by warning devices. In fact, there is Georgia case law to the contrary, including specifically cases involving "Wet Floor" signs.[12] As we said in *Robinson*, an "owner/occupier [of land] owes persons invited to enter the premises a duty of ordinary care to have the premises in a reasonably safe condition and not to expose the invitees to unreasonable risk."[13] We think this principle extends to a merchant's selection and use of devices designed to warn patrons of one hazard that have the

---

[11] *Robinson*, 268 Ga. at 741.

[12] See, e.g., *Sutton v. Winn Dixie Stores, Inc.*, 233 Ga. App. 424, 424-426 (504 SE2d 245) (1998) (suggesting "Wet Floor" sign must be placed in location clearly visible to persons entering premises); *Adams v. Winn-Dixie Stores, Inc.*, 192 Ga. App. 892, 893 (386 SE2d 686) (1989) (acknowledging use of "Wet Floor" sign does not exhaust responsibility to public unless accompanied by "periodic mopping . . . to prevent an unreasonable accumulation of rain water"). See also *Rycraw v. White Castle Systems, Inc.*, 28 SW3d 495, 499 (Mo. Ct. App. 2000) ("A warning cone may become a dangerous condition."); *Luthy v. Denny's, Inc.*, 782 SW2d 661, 663 (Mo. Ct. App. 1989) ("[E]vidence presented at trial created an issue for the jury as to whether the cone, even though it served as a warning device, was in fact a dangerous condition.").

[13] *Robinson*, 268 Ga. at 740.

inherent potential to expose them to a different one.

For the foregoing reasons, the trial court erred in granting summary judgment to AMC. The Court of Appeals properly reversed the trial court's judgment, and we therefore affirm.

*Judgment affirmed. All the Justices concur.*

DECIDED JUNE 1, 2009.

*Gray, Rust, St. Amand, Moffett & Brieske, Christopher M. Ziegler*, for appellants.

*A. Thomas Stubbs, John E. King, Jr.*, for appellees.