**THIRD DIVISION**
**MILLER, P. J.,**
**RAY and BRANCH, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)**
**http://www.gaappeals.us/rules/**

**November 30, 2012**

# In the Court of Appeals of Georgia

A12A1287. TYREE v. WESTIN PEACHTREE, INC. et. al.

MILLER, Presiding Judge.

In this premises liability action, plaintiff Sylvia Tyree appeals the trial court's grant of summary judgment in favor of defendants Westin Peachtree, Inc. and Starwood Hotels and Resorts Worldwide, Inc. (hereinafter "Westin"). Tyree was injured while exiting the Westin hotel when an automatic revolving door allegedly lurched forward, striking her and causing her to fall. Tyree contends that the trial court erred in ruling, as a matter of law, that (1) Westin did not have superior knowledge of any alleged defects in the automatic revolving door and the door was not defective, and (2) Westin did not negligently provide Tyree with false information when the door's recorded voice instructed her to step forward. After a thorough review, we reverse the trial court's grant of summary judgment with regard to the

issues of whether Westin had superior knowledge of any alleged defects in the automatic door, and whether the door was defective. We affirm the grant of summary judgment to Westin on Tyree's claim that the door's recorded voice instruction provided false information.

"On appeal from the grant of summary judgment, this Court conducts a de novo review of the evidence to determine whether there is a genuine issue of material fact and whether the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law." (Citations and punctuation omitted.) *Campbell v. The Landings Assn.*, 289 Ga. 617, 618 (713 SE2d 860) (2011).

So viewed, the evidence shows that on November 16, 2008, Tyree had brunch with her family at the Westin Peachtree Plaza in downtown Atlanta. Tyree had entered the hotel through one of the two automatic revolving doors on the valet parking level of the hotel. When Tyree and her family finished eating, they returned to the valet parking level and exited the hotel via the revolving door near the valet cashier desk, hereinafter referred to as the "south revolving door." Tyree and her cousin were the last two people to exit the hotel. The south revolving door was not moving when Tyree's cousin stepped in first. Tyree heard an automated voice say, "please step forward." As Tyree stepped in, the door suddenly lurched forward,

2

striking the back of Tyree's left shoulder. The force of the impact knocked Tyree to the ground, and Tyree sustained a fractured right hip, a lump on the back of her head and a bruised shoulder.

The south revolving door was installed in 2001. The south revolving door was approximately 14 feet in diameter with three wings or door panels. Each door wing had an infrared wing sensor, also known as the "top rail sensor." The purpose of the wing sensor was to stop the door if someone walking inside the door came within a specified distance of the door wings. The wing sensor was also supposed to stop the door from hitting a person when they stepped into the doorway. The door's manual provided instructions for daily, weekly, monthly and annual maintenance. The manual required daily checks of the emergency and safety devices and the general operation of the door. The daily check would also involve a walk test to make sure that the wing sensors stopped the door when it should stop, and that the door's other sensors operated properly. Westin's personnel were not trained to inspect the hotel's automatic revolving doors and conducted no daily inspections. Westin did not personally service or maintain the automatic revolving doors and it had no regular maintenance program for the doors. Instead, Westin requested service from third-party contractors, as needed.

Westin conducted planned maintenance on the south revolving door on August 4, 2008, in which a service technician noted that the automatic voice was not working. The technician checked all of the door sensors and found no problems with them at that time. Westin also placed service orders for the south revolving door five times between June 11, 2007 and September 8, 2008. The last service order indicated that the voice on the south revolving door was not working. On September 13, 2008, Westin received a report that a woman was injured when one of the revolving doors on the valet parking level stopped on her toe. On October 4, 2008, Westin received a report that another woman was injured when one of the valet-level revolving doors suddenly stopped while she was walking through the door and the door hit her in the face. No evidence showed that Westin inspected or requested service for the doors between the last date of service, September 8, 2008, and the date of Tyree's injury, November 16, 2008.

1. Tyree contends that the trial court erred in ruling that Westin did not have superior knowledge of any alleged defects in the automatic revolving door and the door was not defective as a matter of law. We agree.

"[A]n owner/occupier of land owes persons invited to enter the premises a duty of ordinary care to have the premises in a reasonably safe condition and not to expose

4

the invitees to unreasonable risk." (Punctuation and footnote omitted). *American Multi-Cinema, Inc. v. Brown*, 285 Ga. 442, 447 (3) (679 SE2d 25) (2009). To survive Westin's motion for summary judgment, Tyree had to come forward with evidence showing that Westin had actual or constructive knowledge of the hazard, and that she lacked knowledge of the hazard despite the exercise of ordinary care due to actions or conditions within Westin's control. See *Landrum v. Enmark Stations, Inc.*, 310 Ga. App. 161, 162 (712 SE2d 585) (2011).

Westin argues, and the trial court found, that the south revolving door was an open and obvious condition, and that Tyree had at least equal knowledge with Westin regarding how the door functioned because she successfully traversed the automatic revolving door when she entered the hotel. There are two automatic revolving doors on the hotel's valet-level. Tyree testified that she entered and exited the hotel through the same revolving door.[1] Nevertheless, the specific hazard in this case was an allegedly malfunctioning wing sensor, and it is a plaintiff's knowledge of the specific hazard which is determinative. See *Landrum*, supra, 310 Ga. App. at 164 (2); see also *Cocklin v. JC Penney Corp.*, 296 Ga. App. 179, 182 (674 SE2d 48) (2009).

---

[1] We note that Tyree's testimony regarding which door she used when she entered the hotel was equivocal because she later testified that she did not know which door she used when she entered.

The evidence raised a factual question regarding whether Tyree's injury was caused by a malfunctioning door sensor. Significantly, there was evidence that the wing sensor malfunctioned, because the wing sensor should have stopped the door from hitting Tyree when she stepped into the door on her way out of the hotel. The evidence did not show as a matter of law that Tyree had equal knowledge of the specific hazard in this case—a malfunctioning wing sensor—because the door did not appear to malfunction when she used it to enter the hotel. The evidence also raised a factual question as to whether Westin had superior knowledge of the alleged defect. Even if Westin had no actual knowledge that the wing sensor was malfunctioning at the time in question, Westin had a duty to inspect its premises to discover possible dangerous conditions and take reasonable precautions to protect invitees, such as Tyree, from foreseeable dangers. See *Landrum*, supra, 310 Ga. App. at 162 (1); see also *Benefield v. Tominich*, 308 Ga. App. 605, 607-608 (1) (708 SE2d 563) (2011).

The wing sensors required daily inspections and regular maintenance because they could malfunction at any time. The evidence reflected that Westin did not regularly inspect or maintain the automatic revolving doors, even though Westin

knew that the doors could, and in fact did, malfunction without prior warning.[2] Westin's constructive knowledge of the hazard may be inferred from its lack of a reasonable inspection procedure. *Benefield*, supra, 308 Ga. at 609 (1); see also *Cocklin*, supra, 296 Ga. App. at 183. Furthermore, Westin had actual prior knowledge of two recent injuries involving the hotel's valet-level automatic revolving doors. Although the prior injury reports did not identify the specific door involved in those incidents, the last date of service for the valet-level automatic revolving doors occurred on September 8, 2008, five days before the first prior incident, and no evidence showed that either door was inspected or serviced between September 8, 2008 and November 16, 2008, the date of Tyree's injury.

Since the evidence showed that Westin had actual or constructive knowledge of the alleged hazard, the burden shifted to Westin to produce evidence that Tyree's injury was caused by her own failure to exercise ordinary care. See *American Multi-Cinema*, supra, 285 Ga. at 445 (2). Westin contends that Tyree was looking at her cousin at the time of her injury instead of the oncoming door. There is a factual dispute, however, based on the evidence. Tyree testified that she was not distracted

---

[2] On January 3, 2008, the south revolving door malfunctioned and would not stop rotating. On February 7, 2008, a bolt on the center shaft, which held all three wings up, broke and the door stopped rotating.

by anything, would not have stepped into the door if there was no room for her to do so, and did not try to step into the door at the last possible second. Westin points to no evidence and we have found none showing that Tyree failed to exercise ordinary care as a matter of law. It is well settled that

> issues such as how closely a particular retailer should monitor its premises and approaches, what retailers should know about the property's condition at any given time, how vigilant patrons must be for their own safety in various settings, and where customers should be held responsible for looking or not looking are all questions that, in general, must be answered by juries as a matter of fact rather than by judges as a matter law.

*American Multi-Cinema*, supra, 285 Ga. at 445 (2). For the foregoing reasons, the trial court erred in granting summary judgment to Westin with regard to the issues of whether Westin had superior knowledge of the alleged defect in the south revolving door, and whether the door was defective.

2. Tyree also contends that Westin negligently provided her with false information when the south revolving door's automatic voice said, "please step forward." We disagree.

The Restatement (Second) of Torts § 311 provides that one who negligently gives false information and thereby causes physical harm to another who reasonably

8

relies on that information is liable for such harm. "The essential elements of a claim of negligent misrepresentation are (1) the defendant's negligent supply of false information to foreseeable persons, known or unknown; (2) such persons' reasonable reliance upon that false information; and (3) economic injury proximately resulting from such reliance." (Citation and punctuation omitted.) *Home Depot U.S.A., Inc. v. Wabash Nat. Corp.*, 314 Ga. App. 360, 367 (3) (724 SE2d 53) (2012). In the instant case that standard was not met, because no evidence showed that the south revolving door's automatic message provided false information or caused Tyree's accident.

*Judgment affirmed in part, and reversed in part. Ray, J., concur. Branch, J., concur in judgment only.*

9