**WHOLE COURT**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**March 30, 2015**

# In the Court of Appeals of Georgia

A14A1499. SEAGO v. THE ESTATE OF BERRY EARLE, III.

Boggs, Judge.

Alan Seago brought this action against the estate of Berry Earle, III, for injuries he sustained in a four-wheeler accident. The trial court granted summary judgment in favor of Earle's estate, and Seago appeals. Because the evidence, construed in Seago's favor, shows that he had equal knowledge of the hazard that caused his injury but failed to exercise reasonable care for his own safety, we affirm.

An owner or occupier of land must exercise ordinary care to keep his premises safe for invitees. OCGA § 51-3-1; *American Multi-Cinema v. Brown*, 285 Ga. 442, 447 (3) (679 SE2d 25) (2009). To show negligence in a premises liability case,

> a plaintiff must show that (1) the premises owner had actual or constructive knowledge of the hazard; and (2) the plaintiff lacked knowledge of the hazard, despite her exercise of ordinary care, due to

actions or conditions within the owner's control. However, the plaintiff's evidentiary burden concerning the second prong is not shouldered until the owner establishes that the plaintiff was negligent, that is, she intentionally and unreasonably exposed herself to a hazard of which she knew or, in the exercise of reasonable care, should have known existed. With respect to the second prong, we determine whether the record shows plainly, palpably, and without dispute that plaintiff had knowledge of the hazard equal or superior to that of defendants or would have had equal or superior knowledge had the plaintiff exercised ordinary care for personal safety.

(Citation and punctuation omitted.) *LeCroy v. Bragg*, 319 Ga. App. 884, 885 (1) (739 SE2d 1) (2013). See *Robinson v. Kroger Co.*, 268 Ga. 735, 748-749 (2) (b) (493 SE2d 403) (1997).

On appeal from the denial of summary judgment the appellate court is to conduct a de novo review of the evidence to determine whether there exists a genuine issue of material fact, and whether the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law.

(Citation and punctuation omitted.) *Hood v. Todd*, 287 Ga. 164, 165 (695 SE2d 31) (2010); see OCGA § 9-11-56 (c).

So viewed, the record shows that Seago and Earle's adjoining neighbor were hired to install a fence along the road frontage of Earle's property. The adjoining

2

properties' driveways run approximately parallel on either side of a wooded area. The tools for the work were stored in a shop at the rear of the neighbor's property, and Seago used the neighbor's driveway to go back and forth to obtain tools as needed and to put them away at the end of his work.

Seago worked for approximately two weeks installing the fence. On the afternoon of July 30, 2010, he was riding a four-wheeler through the wooded area between the two driveways searching for some missing tools. He collided with a chain installed between two trees on Earle's property and was seriously injured.

In his deposition, Seago acknowledged that on his first day on the job he saw the chain "up at one time" blocking access to a drive or lane on Earle's property. He acknowledged that he could see if the chain was up or down from that driveway as he drove back and forth in the course of his work. In his deposition, Seago repeatedly testified that on the day of his injury he did not look for the chain but "just assumed it was down," because he had observed that the chain had been down since he began work, including the morning of his injury. Asked if it was correct that "he has seen the chain up before, and he has seen it down," he agreed, "That's right."[1]

---

[1]Earle died in an unrelated motorcycle accident before this action was filed, and he was not deposed. Whether the chain was replaced by him or with his knowledge before the injury is therefore unknown.

This awareness of the existence of the hazard bars Seago's recovery. While he testified that he had not seen the chain installed across the road for approximately two weeks, he was aware of its existence and could see it well enough from a distance to observe whether it was up or down during the course of the two-week period. In *Spires v. Hall*, 230 Ga. App. 357, 358-359 (1) (496 SE2d 501) (1998), we held that the injured rider of four-wheeler had knowledge of a gate, having passed through it "a few years earlier." Therefore, "we cannot escape the fact that [Seago] unquestionably knew about the obstruction and that this knowledge foreclosed his recovery as a matter of law. [Cit.]" Id.

Seago testified that the chain was in "a shaded area" and that it was about 5:30 on a July afternoon when he collided with it. He acknowledged that the area was not part of his ordinary work area: "We didn't use that area. That just wasn't our area to use." He did not have permission from either landowner to go onto that part of the property.[2] Since he testified that he was "weaving in and out of the wooded area in

_____

[2]While this testimony appears to raise an issue as to whether Seago lost his status as an invitee and became a mere licensee by going beyond that part of the premises to which he was invited, *Armstrong v. Sundance Entertainment*, 179 Ga. App. 635, 635-636 (347 SE2d 242) (1986), Seago testified that he was instructed to "lock the gate and put the tools up" after work, and he believed that other individuals who were helping to build the fence may have left some missing tools in the area.

4

between the spot it happened" looking for lost tools in an unfamiliar, shady location, he should have been proceeding slowly while scanning the ground.[3]

Instead, he was driving the four-wheeler at a speed of between 35 and 40 miles per hour, and still accelerating, when he came out of the wooded area into the lane. He entered the lane at a 45 degree angle through a narrow opening in a "thicket" that "looked like [he] could get the four-wheeler down through" to get onto the lane and immediately collided with the chain. He acknowledged that while he was not sure if he was wearing his contact lenses at the time, "with or without the contacts in, if I had had them in or if I had had them out, I'd still – the chain just came up from nowhere, *I came out of the wooded area so fast*." (Emphasis supplied.) He added, "if I was just heading straight to it, *I'm sure I would have seen it*, but me coming out of the area where I was coming out of, there was no time to see it." (Emphasis supplied.) Whether the chain was marked is therefore irrelevant, because Seago acknowledged that he could see it from the neighbor's driveway, but he could not have seen it at the speed and the angle he entered the lane. While Seago did not see the chain at the time of the collision, that was the result of his own conduct.

---

[3]Seago also acknowledged that he "turned [his] head looking for stuff at the same time [he] was traveling."

5

In sum, Seago was driving at high speed through an unfamiliar area, while distracted by looking for tools, and took a shortcut through a narrow opening which he admits was obscured by bushes to enter the lane at a sharp angle. He therefore had departed from any usual route of travel and had a heightened duty of care for his own safety.

> The reasonable selection of a route of travel is a part of the invitee's duty to exercise ordinary care for [his] own safety. While an invitee need not necessarily choose the safest course across the owner/occupier's property, where an invitee voluntarily departs from the route designated and maintained by the owner/occupier for the invitee's safety and convenience, the degree of caution required by the invitee's duty to exercise ordinary care for [his] own safety is heightened by any increased risk resulting from that choice.

(Citation omitted.) *Gaydos v. Grupe Real Estate Investors*, 211 Ga. App. 811, 813 (440 SE2d 545) (1994).

Seago's knowledge of the hazard was equal or superior to that of Earle, and he failed to exercise ordinary care for his personal safety. Accordingly, the trial court did not err in granting summary judgment.

*Judgment affirmed. Ellington, P. J., Dillard, Branch, concur. Doyle, P. J., concurs in the judgment only. Barnes, P. J. and Miller, J., dissent.*

6

A14A1499. SEAGO v. THE ESTATE OF BERRY EARLE, III.

BARNES, Presiding Judge.

Because the trial court erred in granting summary judgment in favor of the appellee, I respectfully dissent. As Judge Blackburn foresaw almost twenty years ago, the "decisions of this Court have so twisted, limited, and misapplied certain holdings of the Supreme Court of Georgia as to create a gauntlet of premises liability analysis through which plaintiffs almost certainly cannot pass." *Blake v. Kroger Co.*, 224 Ga. App. 140, 153 (480 SE2d 199) (1996) (Blackburn, J., dissenting).

The very next year, our Supreme Court granted a writ of certiorari "to examine the appellate decisions which have as their crux a determination as a matter of law that an invitee failed to exercise ordinary care for personal safety," and found the rulings, as a group, suspect for several reasons.

> First, by routinely adjudicating as a matter of law questions of the plaintiff's and defendant's negligence, proximate cause, and the exercise of ordinary care, these decisions have made commonplace what is, in reality, an unusual circumstance in tort law, since as a general proposition issues of negligence, contributory negligence and lack of ordinary care for one's own safety are not susceptible of summary adjudication but should be resolved by trial in the ordinary manner. The

7

trial court can conclude as a matter of law that the facts do or do not show negligence on the part of the defendant or the plaintiff only where the evidence is plain, palpable and undisputable.

*Robinson v. Kroger Co.*, 268 Ga. 735, 739 (1) (493 SE2d 403) (1997).

Twelve years later, in a case involving a "Wet Floor" sign that caused a movie theater patron to trip, the Supreme Court reaffirmed the principle that "[a]n invitee like [Seago] is not bound to avoid hazards not usually present on the premises and which the invitee, exercising ordinary care, did not observe."[4] (Citation and punctuation omitted.) *American Multi-Cinema, Inc. v. Brown*, 285 Ga. 442, 447 (3) (679 SE2d 25) (2009). The Court concluded, as I do in this case, that

> [t]he decision whether to recognize [Seago's] theory of recovery as valid under Georgia premises liability law is precisely the type of legal policy judgment we instructed in *Robinson* must be left to a jury to decide in light of all the attendant circumstances. It is one of the "routine" issues of premises liability — "the negligence of the defendant" - that is "generally not susceptible of summary adjudication" unless the "plain, palpable, and undisputed" evidence requires otherwise.

---

[4]While the majority posits that evidence presents an issue as to whether Seago might have become a licensee because he answered "No" in response to the defendant's question whether he was given permission to go onto this area of Earle's property, Seago also testified that he was not told to avoid that area, that it was considered part of the crew's work area, and that it was used by workers to traverse from one property to the other.

Id.

The principle is quite simple, and it remains the law in this State that the proprietor is bound to exercise ordinary care to protect the invitee from unreasonable risks of which he or she has *superior* knowledge. *Atlanta Gas Light Co. v. Gresham*, 260 Ga. 391 (394 SE2d 345) (1990). Further, as this court stated more than 40 years ago, "[i]t is well-settled law that questions of negligence, diligence, contributory negligence, proximate cause, and the exercise of ordinary care for one's protection ordinarily are to be decided by a jury." *Savannah Ice Delivery Co. v. Ayers*, 127 Ga. App. 560, 561(1) (194 SE2d 330) (1972).

To conclude that summary judgment was proper because Seago admitted that he had on *one* occasion seen a chain placed between two trees, despite his claim that on all other occasions, including the day of the injury, the chain was not present, and the fact that only the appellee had control over when and if the chain was in place, usurps the clearly defined role of the jury. While the majority notes that Seago repeatedly testified that he "assumed" the chain was down, that testimony could easily mean that Seago assumed it was down because he had not seen it earlier that day and therefore did not look for it while he was driving through the woods looking for tools.

The jury should determine whether, based on these facts, Seago acted in a reasonable manner amounting to ordinary care to discover and avoid those things that might cause him injury. See *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991). As further explained by *Lau*, "these issues may be decided by the court [only] in plain and palpable cases where reasonable minds *cannot differ* as to the conclusion to be reached." (Citations and punctuation omitted; emphasis supplied.) Id. at 493. This is not such a case.

> The Summary Judgment Act does not authorize the trial court to sit as both judge and jury, weighing the evidence and deciding issues that are traditionally for the jury. The sole function of the court on a motion for summary judgment is, rather, to determine whether there exists a genuine issue of material fact. In the instant case it is clear that such issues exist.

(Citations and punctuation omitted.) *Collins v. Newman Machine Co.*, 190 Ga. App. 879, 884 (380 SE2d 314) (1989). See *Butler v. Lewman & Co.*, 115 Ga. 752, 758 (42 SE 98) (1902) (worker fell into an open elevator shaft on construction site and Supreme Court held that whether the worker "was, in point of fact, attempting to go upon a necessary errand and was exercising ordinary care, and whether the contractors were, in any or all of the particulars alleged, guilty of negligence which

10

brought about the injuries complained of, were questions for the determination of a jury.") Here, the question of whether or not Seago exercised ordinary care on his own behalf, and whether and to what extent he was contributorily negligent, was for the jury to determine.

Because I believe that the trial court erred in granting appellee's motion for summary judgment, I must respectfully dissent.

I am authorized to state that Judge Miller joins in this dissent.