[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 23-11472

Non-Argument Calendar

_____

BARBARA CONNELL,
Individually, and as Surviving Spouse of
Teddy Max Connell, Deceased,
GREGORY SCOTT WILLIAMS,
as executor of the estate of
Teddy Max Connell, Deceased,

Plaintiffs-Appellants,

*versus*

GOLDEN CORRAL CORPORATION,
a Foreign For-Profit Corporation,

Defendant,

METRO CORRAL PARTNERS, LLC,
A Foreign Limited Liability Company,

                                        Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 1:19-cv-02710-SDG

_____

Before ROSENBAUM, LAGOA, and BRASHER, Circuit Judges.

PER CURIAM:

This is a lawsuit to recover damages for personal injuries suffered by Teddy Connell ("Teddy"), now deceased, after he tripped over a chair leg at a Golden Corral restaurant in Newnan, Georgia. The plaintiffs claim that the restaurant owner, Metro Corral Partners, LLC, is liable for negligence based on a premises-liability theory under Georgia law. The district court granted summary judgment to Metro, and this appeal followed. After careful review, we vacate and remand for further proceedings.

**I.**

The relevant facts are largely undisputed. On May 5, 2017, Teddy and his family went to a Golden Corral restaurant in Newnan. They were seated at a table in Section 300 of the

restaurant's dining area.  Teddy waited at the table while his family went to the buffet.  When his stepdaughter returned to the table, Teddy walked over to the buffet and filled two small plates of food.  On his return, as Teddy was turning into the section where the family was sitting, Barbara Connell saw her husband "clip" his foot on the bottom of a chair leg at an unoccupied table nearby.  He fell and fractured his right femur, for which surgery was necessary.  Teddy died later that month, at the age of 85.

The chairs at issue were designed with a "wall-saver" feature.  This meant that the back legs of the chairs curved outward about halfway down, extending the base of the legs beyond the chairback to prevent the back of the chair from striking a wall.  Most chairs at the Newnan restaurant, however, did not back into a wall, including the chair on which Teddy tripped.  A picture of the type and general configuration of the chairs in the restaurant is reproduced below.



In April 2019, Barbara Connell, individually and as Teddy's surviving spouse, and Gregory Scott Williams, as executor of Teddy's estate (collectively, Plaintiffs), sued Metro in Georgia state court, asserting that its negligence caused Teddy's personal injuries and death. Plaintiffs asserted that Metro violated its duty to keep the premises safe by, among other things, selecting chairs with protruding back legs and arranging tables and chairs with inadequate aisle and unsafe passageways for patrons.

Metro removed the case to federal court and later moved for summary judgment, submitting a statement of material facts. Metro maintained that there was no evidence of a dangerous condition other than the fall, that any dangerous condition was open

and obvious, and that Teddy had knowledge of the condition through "prior traversal" of the same area. Metro noted that Plaintiffs had not proffered any expert testimony in support of their claims. For their part, Plaintiffs responded in opposition and submitted various supporting exhibits.

The district court granted summary judgment for Metro. In doing so, the court first found that Plaintiffs failed to file a response to Metro's statement of facts as required by the Local Rule 56.1(B)(2)(a), N.D. Ga, and instead made improper objections to a few of the facts summarized in Metro's brief. So the court deemed Metro's statement of facts to be undisputed, though it also found that "the outcome would be no different" even if it "were to credit Plaintiffs' improper objections," which it briefly addressed. The court stated that it would disregard the additional facts on which Plaintiffs relied in their opposition brief. Finally, the court determined that Plaintiffs could not establish causation for their wrongful-death claim, relying in part on the death certificate submitted by Plaintiffs, and it declined to consider the remaining grounds Metro raised in its summary-judgment motion.

Plaintiffs moved to alter or amend the judgment, pointing out that they had sued to recover for personal injuries to Teddy in addition to wrongful death, and that causation was not in dispute for Teddy's broken femur and subsequent surgeries. They also claimed that the court had implicitly overlooked their noncompliance with Local Rule 56.1 by considering some of their evidence,

and so, in their view, the court was required to consider the entire record.

The district court denied the motion in part and granted it in part. The court explained that it did not rely on any of Plaintiffs' evidence except for Teddy's death certificate, which was an admissible "public document." And the court again declined to consider "allegedly disputed facts contained only in Plaintiffs' summary judgment opposition brief."

Nevertheless, the district court acknowledged that it had overlooked Plaintiffs' claim for personal-injury damages. So it analyzed whether that claim could "withstand summary judgment," continuing "to rely solely on the undisputed facts put forward by Metro." Based on those facts, the court found no evidence that a dangerous condition existed or that Metro had "actual or constructive knowledge that the chairs were an alleged hazard." The court also indicated that any hazard posed by the chair was open and obvious, noting that Teddy had passed the area where the chair was located at least once before he fell and that no one had moved the chair before his fall. Accordingly, the court concluded that Plaintiffs were not entitled to relief from the judgment, and this appeal followed.

## II.

We start with the district court's application of its local rules, which we review for an abuse of discretion. *Reese v. Herbert*, 527 F.3d 1253, 1267 n.22 (11th Cir. 2008).

Plaintiffs do not dispute that they failed to comply with Local Rule 56.1(B)(2)(a) by not filing a separate statement of facts with "individually numbered" responses "corresponding to each of the movant's numbered undisputed material facts." *See* N.D. Ga. LR 56.1(B)(2)(a). And they properly concede that the district court was "within its rights" to "completely ignore[] the facts in [Plaintiffs'] brief." But they maintain that the court implicitly waived compliance with Local Rule 56.1 by choosing to consider some of their evidence, anyway.

In *Reese v. Herbert*, we held that district courts may apply Local Rule 56.1 "to disregard or ignore evidence relied on by the respondent—but not cited in its response to the movant's statement of undisputed facts—that yields facts contrary to those listed in the movant's statement." 527 F.3d at 1268. "[A]fter deeming the movant's statement of undisputed facts to be admitted pursuant to Local Rule 56.1, the district court must then review the movant's citations to the record to determine if there is, indeed, no genuine issue of material fact." *Id.* at 1269 (quotation marks omitted). But if the district court does not "hew to the evidentiary line drawn by Local Rule 56.1," and considers the evidence submitted by the non-compliant party, it cannot pick and choose and instead must "base its decision on *all* of the evidentiary materials in the record on summary judgment." *See id.* at 1270 (emphasis in original).

Metro concedes that "the district court may have considered some, but not all, of the evidence cited by the Appellants in response to [its] motion for summary judgment," and it does not

defend the court's application of Local Rule 56.1.  Instead, Metro asserts that summary judgment was still appropriate based on "all of the evidence in the record."  In particular, Metro maintains that recovery is barred because Teddy had equal knowledge of any hazards posed by the chair.

After reviewing the record (and in light of Metro's concession), we agree with the plaintiffs that the district court appears to have considered at least some of Plaintiffs' evidence cited in their response.  Thus, under *Reese*, the district court was required "to base its decision on *all* of the evidentiary materials in the record on summary judgment."  *See* 527 F.3d at 1270.  Because it did not do so, it erred in its application of Local Rule 56.1, and we will consider all the evidence in the summary judgment record.  We now turn to the merits.

## III.

Where a motion for summary judgment is unopposed, "the district court cannot base the entry of summary judgment on the mere fact that the motion was unopposed, but, rather, must consider the merits of the motion."  *United States v. One Piece of Real Prop. Located at 5800 SW 7th Ave.*, 363 F.3d 1099, 1101–02 (11th Cir. 2004).  In particular, the court must "review all of the evidentiary materials submitted in support of the motion for summary judgment," and "determine if there is, indeed, no genuine issue of material fact."  *Id.* at 1101–02 & 1103 n.6.

23-11472                Opinion of the Court                9

We review *de novo* the grant of summary judgment, viewing the evidence and drawing all reasonable inferences in favor of the nonmoving party—here, Plaintiffs. *Guevara v. NCL (Bahamas) Ltd.*, 920 F.3d 710, 720 (11th Cir. 2019). Summary judgment is improper "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* (quotation marks omitted).

Premises owners in Georgia owe invitees a duty "to exercise ordinary care in keeping the premises . . . safe." O.C.G.A. § 51-3-1. "When a premises liability cause of action is based on a 'trip and fall' or 'slip and fall' claim," the plaintiff must demonstrate two elements: (1) that "the defendant had actual or constructive knowledge of the hazard; and (2) [that] the plaintiff, despite exercising ordinary care for his or her own personal safety, lacked knowledge of the hazard due to the defendant's actions or to conditions under the defendant's control." *Am. Multi-Cinema, Inc. v. Brown*, 679 S.E.2d 25, 27–28 (Ga. 2009) (citations omitted). For the second prong, the question is whether the "plaintiff had knowledge of the hazard equal or superior to that of defendants or would have had equal or superior knowledge had the plaintiff exercised ordinary care for personal safety." *Simon v. Murphy*, 829 S.E.2d 380, 382 (Ga. Ct. App. 2019).

According to the Georgia Supreme Court, "'routine' issues of premises liability, i.e., the negligence of the defendant and the plaintiff, and the plaintiff's lack of ordinary care for personal safety are generally not susceptible of summary adjudication." *Robinson v. Kroger Co.*, 493 S.E.2d 403, 414 (Ga. 1997). Thus, issues such as

"how vigilant patrons must be for their own safety in various settings, and where customers should be held responsible for looking or not looking" ordinarily "must be answered by juries as a matter of fact rather than by judges as a matter of law." *Brown*, 679 S.E.2d at 28.  Summary judgment on these issues should be "granted only when the evidence is plain, palpable, and undisputed." *Robinson*, 493 S.E.2d at 414.

Here, the district court erred in granting summary judgment to Metro.  Plaintiffs' theory of liability is that the wall-saver feature of the chairs—that is, rear legs protruding further out than the chairback—created an unreasonable risk of foreseeable harm in the form of a tripping hazard when those chairs back into a walkway instead of a wall.  The tripping hazard arises, according to Plaintiffs, because "a person walking behind the chair can avoid contact with the obvious upper part of the chair and still trip on the unexpected outward curvature of the chair's leg."

The district court found no "evidence that Metro had actual or constructive knowledge that the chairs were an alleged hazard." But that is incorrect.  Metro submitted the deposition testimony of its vice president of operations, Jeffrey Cheatham, who confirmed numerous prior trip-and-fall incidents involving the same chairs at other Golden Corral locations.  And on appeal, Metro does not contest whether a reasonable jury could find that it had actual or constructive knowledge that the chairs' protruding back legs may pose a tripping hazard.  *See Brown*, 679 S.E.2d at 27–28.  Its reply

brief at summary judgment likewise effectively conceded the point, despite noting it was disputed.

Instead, Metro maintains that recovery was barred because any hazard posed by the chair was open and obvious and would have been readily discernible had Teddy been exercising ordinary care for his own personal safety. The district court agreed, citing evidence that Teddy had passed the area where the chair was located at least once before he fell, that his view of the chair was unobstructed, and that the chair had not moved.

Under Georgia law, "when a person has successfully negotiated an alleged dangerous condition on a previous occasion, that person is presumed to have equal knowledge of it and cannot recover for a subsequent injury resulting therefrom." *Gervin v. Retail Prop. Tr.*, 840 S.E.2d 101, 104 (Ga. Ct. App. 2020) (quoting *Perkins v. Val D'Aosta Co.*, 699 S.E.2d 380, 383 (Ga. Ct. App. 2010)). "The rule imputing knowledge of a danger to a person who has successfully negotiated an alleged dangerous condition before applies only to cases involving a static condition that is readily discernible to a person exercising reasonable care for his own safety." *Id.* (quoting *Strauss v. City of Lilburn*, 765 S.E.2d 49, 52 (Ga. Ct. App. 2014)). "A static condition is one that does not change and is dangerous only if someone fails to see it and walks into it." *Rentz v. Prince of Albany, Inc.*, 797 S.E.2d 254, 257 (Ga. Ct. App. 2017).

We conclude the evidence is not "plain, palpable, and undisputed," *Robinson*, 493 S.E.2d at 414, that Teddy knew or should have known of the *specific* hazard which allegedly caused his fall. *See*

*Landrum v. Enmark Stations, Inc.*, 712 S.E.2d 585, 588 (Ga. Ct. App. 2011) ("It is a plaintiff's knowledge of the *specific* hazard which precipitates the [trip] and fall which is determinative[.]" (quotation marks omitted)); *see also Johnson v. LT Energy, LLC*, 890 S.E.2d 320, 324 (Ga. Ct. App. 2023).

Undisputed evidence shows that, at the time he fell, Teddy was returning from the buffet carrying food, when his view of the floor was likely obstructed. That Teddy previously had walked by the chair on which he tripped and other identical chairs does not, without more, demand a finding that he had knowledge of the chairs' protruding back legs. Walking near a hazard is different than "successfully negotiating" it, and there is no evidence showing how near or far Teddy previously walked to the chair he later tripped on. So we cannot conclude that it is undisputed that Teddy had successfully negotiated the chair's back legs.[1] *See Jackson v. Waffle House, Inc.*, 537 S.E.2d 188, 191 (Ga. Ct. App. 2000) ("[T]he evidence does not demand a finding that she had constructive notice of this specific hazardous cavity one or two steps from the edge of the curb, simply because she had traversed the parking lot many times over the year."); *Perkins*, 699 S.E.2d at 126–29 (finding that there was an issue of material fact where plaintiffs presented evidence that a "step down from the curb was difficult to see when approached from above due to lighting conditions, darkened

---

[1] For purposes of this discussion, we assume, without deciding, that the restaurant chair was a "static condition."

surfaces and lack of warning," even though the injured plaintiff had stepped off the curb before).

Nor can we say as a matter of law that the specific alleged hazard would have been "readily discernible to a person exercising reasonable care for his own safety." *Johnson*, 890 S.E.2d at 324 (quotation marks omitted). The picture reproduced above indicates that, while the curve of the back legs may have been obvious to a passing patron, the exact position of the back legs relative to the chairback would not have been. Moreover, Georgia law imposes no obligation on patrons "to look continuously at the floor, without intermission, for defects." *Brown*, 679 S.E.2d at 29 (quotation marks omitted). And issues such as "how vigilant patrons must be for their own safety" and where they "should be held responsible for looking or not looking" are generally jury issues. *Id.* at 28; *Robinson*, 493 S.E.2d at 414; *cf. Simon*, 829 S.E.2d at 384 (finding that there were fact issues regarding the plaintiff's exercise of ordinary care where the hazard—a damaged crossbar in a cart coral—was elevated only about an inch above asphalt and where the plaintiff testified that she was "walking normally" with her gaze at "eye level"); *Shubert v. Marriott Corp.*, 456 S.E.2d 680, 681 (Ga. Ct. App. 1995) (where the plaintiff tripped on a cart, which had a bottom edge that protruded several inches beyond the counter where it was placed, and the plaintiff testified that "the tray she was carrying obscured her vision," holding that whether the plaintiff "exercised the requisite degree of care for her own safety while carrying a tray is a question for the jury to consider").

Metro relies on *Rentz* in support of affirming the district court's grant of summary judgment, but we find that case distinguishable. The alleged hazard in *Rentz* was a cornhole game with "two plywood ramps measuring approximately four feet long by one foot wide," and "each ramp was eleven and one-half inches high at its highest point and four inches high at its lowest point." 797 S.E.2d at 388. The game was placed in "an open area of the floor" of the car dealership. *Id.* at 390. The Georgia Court of Appeals affirmed the grant of summary judgment in favor of the dealership, noting that it was undisputed that nothing distracted the plaintiff or obscured her vision of the game and that "the board was not a small, hard-to-notice defect that required extreme care to observe." *Id.* By contrast here, viewing the evidence in the light most favorable to Plaintiffs, Teddy's vision was potentially obstructed by carrying food from the buffet, and the chair's back legs did not vertically align with the chairback, as they curved outward.

For these reasons, we conclude that genuine issues of material fact remain for the jury's resolution. We therefore vacate the grant of summary judgment to Metro and remand for further proceedings on Plaintiffs' negligence claim for personal injury damages.[2]

---

[2] Plaintiffs' briefing does not address the district court's ruling that the wrongful-death claim failed for lack of evidence of causation, so any challenge in that regard has been abandoned. *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 680 (11th Cir. 2014) (stating that issues not raised on appeal are deemed abandoned).

23-11472                Opinion of the Court                15

**VACATED AND REMANDED.**