A03A1690. MAC INTERNATIONAL-SAVANNAH HOTEL, INC.
et al. v. HALLMAN et al.
(595 SE2d 577)

BARNES, Judge.

The trial court denied a motion for summary judgment brought by the defendant hotel in this slip and fall case, and this court granted the hotel's application for interlocutory appeal. The hotel argues that the trial court erred in denying its motion because the plaintiff failed to exercise ordinary care in traversing a static condition; assumed the risk of climbing the stairs she then fell on; and had equal knowledge of the stairs. For the reasons that follow, we affirm the trial court's decision.

Doris and John Hallman came to Savannah around 2:00 p.m. in September 1998 with a tour group on a bus trip from Trenton, New Jersey. The tour guide checked them into the Days Inn-Days Suites-Historic Riverfront while they took a bus tour of the city, and gave them the key to their room upon their return to the hotel around 6:00 p.m. They stayed in their room for about a half an hour, then walked around and had dinner. On their return to the hotel a couple of hours later, Doris Hallman said she saw a five-inch by seven-inch sign on the first door she came to, but the print was too small to read and the doorway was dark and shadowy. The handrails were overgrown with bushes. She walked up the two brick stairs and crossed the landing in order to get close enough to read the sign, which said "Exit only. Do not Enter." She turned to her husband, who was still down on the sidewalk, said they needed to go next door, and started down the stairs. She fell and broke her ankle on the steps, which were of unequal height, which she could not see while walking up the stairs because the area was "shadowed and very unlit."

John Hallman testified that the two carriage lights outside the door reflected no light onto the landing or doorway. The printing on the sign was unreadable because it was backlit from the inside of the hotel, and his wife had to get within three feet to read it. The bushes were overgrown and the handrails were far apart. The two steps appeared to be of equal height.

A civil engineer who specializes in building and site design testi-

fied by deposition that the stairs on which Doris Hallman tripped were "extremely out of code and is a trip hazard." In his opinion, the stairs were a trip hazard for seven reasons:

1. the rise and run did not meet Standard Building Code regulations;
2. the stair risers vary beyond what is acceptable under the code;
3. the surface was smoother than it should be;
4. the handrail height did not meet code;
5. the stairs should be covered because they were outside;
6. the lighting was inadequate; and
7. vegetation growing on or through the rail would be a safety hazard.

The rise, or height between the stair treads, was four inches for the first step, five and a half inches for the second step, and six inches for the third step, when code requires that the risers vary by no more than three-sixteenths of an inch. Besides the proportions of the treads and risers being wrong, this variation in height tends to cause people to trip. "When you're walking upstairs, to keep from tripping, the riser should be uniform in dimension so it gives a natural rhythm. When they're different, you catch yourself or have a tendency to trip." The expert quoted from the Life Safety Code as follows, "Many accidents have resulted from irregularities in stair geometry from step to step or over an entire run of stairs. There should be no design irregularities. Variations due to construction are permitted provided the variation is less than 3/16."

In *Robinson v. Kroger Co.*, 268 Ga. 735, 748-749 (2) (b) (493 SE2d 403) (1997), our Supreme Court reiterated that,

in order to recover for injuries sustained in a slip-and-fall action, an invitee must prove (1) that the defendant had actual or constructive knowledge of the hazard; and (2) that the plaintiff lacked knowledge of the hazard despite the exercise of ordinary care due to actions or conditions within the control of the [owner].

*Robinson* reminded all courts that the plaintiff's lack of ordinary care for personal safety is generally not susceptible of summary adjudication and that only when the evidence is plain, palpable, and undisputed is summary judgment authorized. Id.

1. With respect to the first prong, Hallman presented evidence that the steps were swept every day and pressure-washed quarterly. This evidence, combined with the expert testimony, is sufficient for a factfinder to infer that the steps were a hazardous condition of which

the hotel had actual or constructive knowledge. *Flournoy v. Hosp. Auth. of Houston County*, 232 Ga. App. 791 (504 SE2d 198) (1998). Therefore, for purposes of summary judgment, plaintiff has satisfied the first prong of the *Robinson* test. Id. at 792.

2. As to the second prong, the hotel claims the trial court erred in denying its motion for summary judgment in this case because the steps were a static condition and Doris Hallman's failure to exercise ordinary care was the proximate cause of her injuries. A static condition is "one that is not inherently dangerous or likely to cause injury until one drives or falls into it or trips over it." (Citations omitted.) *Hosp. Auth. of Ben Hill County v. Bostic*, 198 Ga. App. 500, 501 (402 SE2d 103) (1991). In *Tanner v. Larango*, 232 Ga. App. 599 (502 SE2d 516) (1998), we reversed the trial court's denial of summary judgment to a business owner whose customer tripped and fell after stepping in a gap between the sidewalk and parking lot. In that case, however, unlike the case before us, photographs showed that the gap was "plainly visible." The evidence there revealed no "fault or negligence by defendants and show[ed] indisputably that plaintiff knew of the danger." Id.

The conditions under which the plaintiff fell in *Tanner* are plainly dissimilar to the case before us, in which the plaintiff had never descended the stairs she fell on, which were uneven, poorly lit, shadowy, and topped by a door with a handwritten, backlit sign that could not be read without first climbing the stairs and peering closely. This ground therefore has no merit. *Hamilton v. Kentucky Fried Chicken*, 248 Ga. App. 245 (545 SE2d 375) (2001); see *Murray v. West Bldg. Materials*, 243 Ga. App. 834 (534 SE2d 204) (2000) (physical precedent only).

3. The hotel next argues that Doris Hallman assumed the risk of her fall because she chose to enter the "shadowy area" and to use the stairs without holding the handrail. Unlike the plaintiff in *Cheek v. Nat. Auto Sales*, 253 Ga. App. 114 (558 SE2d 451) (2001), Hallman did not "voluntarily depart[ ] from the route designated and maintained by the owner/occupier for the invitee's safety and convenience," id. at 115, thus assuming a heightened requirement for caution on her part. To the contrary, the hotel set the stage for the injury by failing to illuminate the doorway, by posting a sign that could not be read from the sidewalk, and by maintaining uneven steps that could not be seen clearly, paired with overgrown handrails that were too low. While climbing stepladders may be inherently dangerous, *Carroll v. Ga. Power Co.*, 240 Ga. App. 442, 444 (2) (523 SE2d 896) (1999), climbing stairs should not be, particularly stairs leading to an outside hotel door that is neither clearly marked nor well lighted. "[I]f the dim lighting prevents the injured party from discovering a dangerous condition of which the owner, but not the injured party,

should be aware, liability may be imposed." (Citations omitted.) *Joyner v. Sandefur Mgmt. Co.*, 168 Ga. App. 854, 857 (3) (d) (310 SE2d 578) (1983). This enumeration is meritless.

4. Finally, the hotel contends that it cannot be liable for Hallman's injuries because she had equal knowledge of the entryway conditions. Hallman's knowledge obtained by ascending the stairs once in the dark to read a posted sign does not equal the hotel's knowledge obtained by sweeping the area every morning and otherwise maintaining it regularly. Hallman testified that the doorway was dark and shadowy, and her husband testified that the steps appeared to be of the same height.

"It is a plaintiff's knowledge of the specific hazard which precipitates the slip and fall which is determinative, not merely [her] knowledge of the generally prevailing hazardous conditions or of the hazardous conditions which [she] observes and avoids." (Citation, punctuation and emphasis omitted.) *Sacker v. Perry Realty Svcs.*, 217 Ga. App. 300, 302 (457 SE2d 208) (1995) (whole court) (fact that plaintiff avoided tripping over railroad ties in daylight does not import knowledge of dangerous condition caused at night); see *Globe Oil Co. v. DeLong*, 182 Ga. App. 395, 396 (1) (356 SE2d 47) (1987) (whole court) (walking across uneven pavement only once does not establish equal knowledge of hazard as matter of law). Nothing in the evidence establishes that the plaintiff here knew the stairs were an uneven trip hazard. The trial court did not err in denying the hotel's motion for summary judgment.

*Judgment affirmed. Johnson, P. J., Blackburn, P. J., Eldridge, Mikell and Adams, JJ., concur. Andrews, P. J., dissents.*

ANDREWS, Presiding Judge, dissenting.

Because I believe that Mac International exercised appropriate care and had no actual or constructive knowledge of the claimed defect, Mrs. Hallman failed to exercise ordinary care in traversing a static condition, assumed the risk of climbing the dimly lit stairs where she fell, and had equal knowledge of their condition, I respectfully dissent.

In addition to the facts set out by the majority, I believe the following facts are essential to analysis of this case. The hotel was not constructed by defendant Mac International, the owner of the property in 1998, but by Days Inn Corporation. It was not disputed that, at the time of Mrs. Hallman's fall, in addition to the daily sweeping and quarterly pressure-washing, Johnson, the general manager of the property, personally walked the property two to three times a week, looking for any problems or defects. Also, Mac International has a technical advisor, an engineer, who visits the property at least twice a year to inspect and make recommendations, and he had done

so before Mrs. Hallman's fall. No recommendations regarding improvement of the stairs or exit were made. No prior complaints regarding this exit and steps had been received from any other guests or employees. The only reason a handwritten sign was on the exit door instead of a permanent red "Exit Only" sign was that the permanent one had recently been stolen. The main entrance to the property was a covered walkway around the corner from the exit at issue. Mr. and Mrs. Hallman exited their bus at the main entrance and left from the main entrance when they went to River Walk for dinner and walked past the exit where she later fell.

In order to show defendants were negligent, Hallman was required to present evidence that (1) the Days Inn had actual or constructive knowledge of the irregularities of the steps and entrance, and (2) she was without knowledge of these conditions or was hindered from discovering it by the defendants. *Robinson v. Kroger Co.*, 268 Ga. 735, 748 (493 SE2d 403) (1997).

In Division 1, the majority concludes, based solely on *Flournoy v. Hosp. Auth. of Houston County*, 232 Ga. App. 791 (504 SE2d 198) (1998), that, because the steps were swept every day and pressure-washed quarterly, this, coupled with the expert's testimony that the steps were out of code and a trip hazard, satisfied the first prong of *Robinson*, Mac International's actual or constructive knowledge of the defect. In *Flournoy*, however, the hospital actually built the defective ramp and painted it with nonskid paint, indicating an awareness of the potential hazard. *Flournoy*, supra at 792.

Here, Mac International did not build the building and had in place a regular inspection procedure. There has, therefore, been no showing of actual knowledge of the defect. *Lake v. Atlanta Landmarks*, 257 Ga. App. 195, 196 (570 SE2d 638) (2002); *Ballew v. Summerfield Hotel Corp.*, 255 Ga. App. 494, 495-496 (2) (a) (565 SE2d 844) (2002).

"Constructive knowledge can only be inferred with proof that the proprietor or its agent could have easily discovered and corrected the alleged hazard. *Rodriquez v. City of Augusta*, 222 Ga. App. 383, 384 (1) (474 SE2d 278) (1996)." *Lindsey v. Ga. Bldg. Auth.*, 235 Ga. App. 718, 720 (1) (509 SE2d 749) (1998); *Ballew*, supra at 496 (2) (b).

The Hallmans do not dispute that Mac International had in place a regular inspection program which had never noted any problems with the exit and steps and that no one had ever complained about this exit and steps. Because Mac International had such an inspection program, which found no defects, no constructive knowledge has been shown by the Hallmans. *Ballew*, supra at 496 (2) (b).

The only problems mentioned by the Hallmans were a general unevenness of the steps, Mr. Hallman's concern that the steps needed a center railing, and the dim lighting, which were all obvious to the

Hallmans, making their knowledge equal to Mac International's under the second prong, as discussed below, even if the first is satisfied.

Further, regarding what caused her fall, Mrs. Hallman deposed that "I don't know what happened. I didn't lose my balance. I had my glasses on." Asked if she had an opinion as to the cause of her fall, she stated,

> [y]es. After looking at the pictures and seeing the amount of shadows and remembering that night that there wasn't a lot of lighting, my opinion is is [sic] that the fact that it wasn't lit enough, it wasn't — I don't know. How do I want to phrase this? It just wasn't very well lit. The small lighting [(a light added later)] wasn't there. I didn't see the handrails that night. I don't remember reaching for the handrails that night. I remember the cobblestones down at River Walk were like slippery or damp with the humidity, because it was very humid. I guess all of these things would have contributed to the fall.

Therefore, even if a code violation, which is only negligence per se,[1] could be said to have been shown and known to Mac International, there was no indication that the unevenness in the steps or the inadequate handrail height was the cause of Mrs. Hallman's fall, entitling Mac International to summary judgment. *Mitchell v. Austin*, 261 Ga. App. 585 (583 SE2d 249) (2003) (failure to show that code violations caused or contributed to fall down steps entitled owner to summary judgment); *Lindsey*, supra; see *Emory Univ. v. Smith*, 260 Ga. App. 900, 902 (581 SE2d 405) (2003).

Even if these factors were the cause of Mrs. Hallman's fall, she had equal knowledge of them.

A static condition is one that does not change and is dangerous only if someone fails to see it and walks into it. *Becton v. Tire King of North Columbus*, 246 Ga. App. 57, 59 (539 SE2d 551) (2000); *Wright v. JDN Structured Finance*, 239 Ga. App. 685, 686 (2) (522 SE2d 4) (1999); *Poythress v. Savannah Airport Comm.*, 229 Ga. App. 303, 306 (3) (494 SE2d 76) (1997). "[If] nothing obstructs the invitee's ability to see the static condition, the proprietor may safely assume that the invitee will see it and will realize any associated risks." *Poythress*, supra. See also *Ballew*, supra at 497 (4); *Hannah v. Hampton Auto Parts*, 234 Ga. App. 392, 395 (506 SE2d 910) (1998).

Although acknowledging that this case involves a static condi-

---

[1] "Negligence per se *is not liability per se.*" *Florence v. Knight*, 217 Ga. App. 799, 800 (459 SE2d 436) (1995).

tion, the majority merely finds that the conditions under which Mrs. Hallman fell are dissimilar from those in *Tanner v. Larango*, 232 Ga. App. 599 (502 SE2d 516) (1998), relied upon by Mac International regarding equal knowledge. It is unclear why this dissimilarity is dispositive, because the unevenness, poor lighting, and shadows were as obvious to the Hallmans as the moss-filled gap between a sidewalk and parking lot was to Larango. Mrs. Hallman saw the unevenness of the steps, knew that the lighting was "dark and shadowy," but nonetheless chose that doorway to enter, rather than returning to the main entrance from which they exited.

Here, Mrs. Hallman had just walked up the stairs without incident. As acknowledged by the majority, going *up* the stairs was, in the opinion of her expert, when one had a tendency to trip due to differences in the risers of the steps. There was no showing that the risk was the same going down the stairs as Mrs. Hallman was when she fell.

*Hamilton v. Kentucky Fried Chicken*, 248 Ga. App. 245 (545 SE2d 375) (2001), and *Murray v. West Bldg. Materials*, 243 Ga. App. 834 (534 SE2d 204) (2000), are relied upon by the majority for the proposition that one trip over the static condition is not enough from which to presume a plaintiff's knowledge of the hazard. As noted by the majority, however, *Murray* is physical precedent only and therefore not binding. Court of Appeals Rule 33 (a). In *Hamilton*, the plaintiff originally traversed the parking lot containing the raised curb over which she tripped in daylight. It was pitch black when she tripped, because the owners of the restaurant had intentionally not yet turned on the parking lot lighting. As well, there was a question of whether traffic going through the drive-through lane distracted plaintiff. None of these factors are involved here.

For these reasons, I believe Mac International was entitled to summary judgment.

DECIDED FEBRUARY 20, 2004

*Forbes & Bowman, Morton G. Forbes, Scot V. Pool*, for appellants.
*Barnard M. Portman*, for appellees.