**THIRD DIVISION**
**BARNES, P. J.,**
**BOGGS and BRANCH, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**July 10, 2014**

# In the Court of Appeals of Georgia

A14A0227. HENDERSON, et al. v. ST. PAUL BAPTIST CHURCH.

BRANCH, Judge.

Georgia and Van Henderson appeal from an order of the Clinch County Superior Court granting summary judgment in favor of St. Paul Baptist Church on the Hendersons' claims for premises liability and loss of consortium. The Hendersons contend that the trial court erred in granting summary judgment because factual questions exist as to whether St. Paul failed to keep its premises safe and failed to warn Georgia Henderson of a known, hidden hazard on its property. They further assert that a factual question exists as to whether Georgia Henderson encountered the hidden hazard when she attempted to take a shortcut to the side entrance of the church, rather than walking on the designated approach to the church's main entrance. For

reasons explained below, we agree with the Hendersons and therefore reverse the order of the trial court.

"In an appeal from the grant or denial of a motion for summary judgment, we apply a de novo standard of review, viewing the evidence, including any reasonable conclusions and inferences that it supports, in the light most favorable to the nonmovant." *SKC, Inc. v. EMAG Solutions*, ___ Ga. App. ___ (755 SE2d 298) (2014) (citation omitted). Viewed in the light most favorable to the Hendersons, the record shows that on January 7, 2010, the Hendersons were scheduled to conduct a revival service as visiting pastors at St. Paul at the invitation of St. Paul's pastor, Amos Lee, Jr. The Hendersons arrived at the church shortly before the 7:30 p.m. service.[1] There is no designated parking lot on church property, but upon their arrival, the Hendersons saw Pastor Lee, who motioned for the Hendersons to park behind his car, which he had parked on the church property next to the left side of the church building. The Hendersons then saw Lee and Lee's wife enter the church building through a side entrance.

Van Henderson, who was driving, parked the car on the left side of the church behind Lee's car, next to shrubbery that was planted along the side of the church

---

[1] It was dark at the time of the Hendersons' arrival at the church.

2

building. Van Henderson was careful, however, to park the car far enough away from the shrubbery that when opened, the passenger side door would not hit the bushes. Van Henderson then exited the car and went towards the front entrance of the church to check on the arrival of musical equipment being brought from the Hendersons' church for use at the revival service. Georgia Henderson and several passengers remained in the Hendersons' car, but after a few minutes, Georgia exited the car planning to walk with her fellow passengers between her car and the shrubbery to the front of the church building. When she got out of the car, Mrs. Henderson was within five feet of the shrubbery, and she saw that the ground around the shrubbery was covered in pine straw. She saw no ground next to the car that was free of pine straw, and given that she had just seen Lee and his wife leave their car and walk into the church, she assumed it was safe to step on the pine straw. After she had closed the car door, Mrs. Henderson walked no more than a few steps before stepping in a hole and falling, suffering a spiral fracture of her leg.

Lee testified that the shrubbery at issue had been planted approximately one month earlier, and the hole in which Henderson fell was actually a trench that had been dug around the landscaping in an effort to keep it watered. At the time of Henderson's fall, the trench was not visible because it was covered in pine straw and

leaves, and it was not marked in any way. The Hendersons had never parked in the same place before, and Lee admitted that he did not inform Georgia Henderson about the trench and that she could not have known about the presence of the trench before she fell in it.

St. Paul moved for summary judgment, arguing that the church could not be held liable for Mrs. Henderson's injuries as a matter of law because those injuries occurred when Georgia Henderson deviated from the designated route to the front of the church and instead attempted to take a shortcut "through [a] flower bed" to reach the side entrance of the church. The trial court granted St. Paul's motion, and this appeal followed.

"An owner or occupier of land has a legal duty, enforceable by lawsuit, to exercise ordinary care to keep and maintain its premises and the approaches in a condition that does not pose an unreasonable risk of foreseeable harm to the invited public." *Am. Multi-Cinema v. Brown*, 285 Ga. 442 (679 SE2d 25) (2009). See also OCGA § 51-3-1.[2] In order to recover in a "trip and fall" or "slip and fall" claim,

---

[2] OCGA § 51-3-1 provides as follows: "Where an owner or occupier of land, by express or implied invitation, induces or leads others to come upon his premises for any lawful purpose, he is liable in damages to such persons for injuries caused by his failure to exercise ordinary care in keeping the premises and approaches safe."

4

"[t]the plaintiff must plead and prove that: (1) the defendant had actual or constructive knowledge of the hazard; and (2) the plaintiff, despite exercising ordinary care for his or her own personal safety, lacked knowledge of the hazard due to the defendant's actions or to conditions under the defendant's control." *Brown*, 285 Ga. at 444 (2) (footnote omitted). In *Brown*, the Supreme Court also explained the shifting burdens imposed on the parties in connection with a motion for summary judgment:

> [T]o survive a motion for summary judgment, a plaintiff must come forward with evidence that, viewed in the most favorable light, would enable a rational trier of fact to find that the defendant had actual or constructive knowledge of the hazard. At that point, the burden of production shifts to the defendant to produce evidence that the plaintiff's injury was caused by his or her own voluntary negligence (intentional disregard of a known risk) or causal negligence (failure to exercise ordinary care for one's personal safety). If the defendant succeeds in doing so, the burden of production shifts back to the plaintiff to come forward with evidence that creates a genuine dispute of fact on the question of voluntary or causal negligence by the plaintiff or tends to show that any such negligence resulted from the defendant's own actions or conditions under the defendant's control.

*Brown*, 285 Ga. at 444-445 (2) (footnote omitted). Finally, in such lawsuits, it is well-established that

the "routine" issues of premises liability, i.e., the negligence of the defendant and the plaintiff, and the plaintiff's lack of ordinary care for personal safety are generally not susceptible of summary adjudication, and . . . summary judgment is granted only when the evidence is plain, palpable, and undisputed.

*Dickerson v. Guest Srvcs. Co. of Va.*, 282 Ga. 771-772 (653 SE2d 699) (2007) (citation omitted). In this case, the evidence is not plain, palpable, and undisputed and so summary judgment should not have been granted in favor of St. Paul.

(a) First, the Hendersons presented sufficient evidence to enable a rational trier of fact to conclude that St. Paul had actual or constructive knowledge of the hole in which Georgia Henderson fell, thereby satisfying their initial burden under *Brown*. Lee admitted that within the previous month, the church had dug a trench along the side of the bushes and that the trench was covered with pine straw. Lee himself was aware of the presence of the trench and that it was concealed by pine straw. And Georgia Henderson testified that she was injured when she stepped into a "trench-type hole." The Hendersons therefore produced evidence that would enable a rational trier of fact to find that St. Paul had actual or constructive knowledge of the hazard. The burden of production therefore shifted to the Hendersons to produce evidence that the

plaintiff's injury was caused by his or her own voluntary or causal negligence. *Brown*, 285 Ga. at 445 (2).

(b) St. Paul counters that Georgia Henderson's injury was caused by her decision about how to get to the church entrance. See, e.g., *Gaydos v. Grupe Real Estate Investors*, 211 Ga. App. 811, 813 (440 SE2d 545) (1994) ("The reasonable selection of a route of travel is a part of the invitee's duty to exercise ordinary care for her own safety."). St. Paul contends the evidence shows that there was approximately five feet of ground between the Hendersons' vehicle and the "flower bed" that Georgia Henderson could have used to get to the church entrance but that, after taking a few steps toward the entrance of the church, she "deviated from the permitted path" by deciding "to step into the pine straw covered flower bed." St. Paul presented evidence to show that the Hendersons parked far enough away from the bushes so that an open car door would not touch them, as well as some photographs suggesting that the pine straw did not extend much beyond the edge of the bushes themselves. Thus, St. Paul presented evidence supporting the theory that Georgia Henderson's injury was caused by her own negligence. See, e.g., *Chamblee v. Grayco, Inc.*, 266 Ga. App. 154, 156 (596 SE2d 683) (2004) (voluntary departure rule precluded the plaintiff's recovery as a matter of law where plaintiff voluntarily stepped from the sidewalk,

7

which was the route designated by the owner/occupier, onto a partially exposed drainage pipe, fell and was injured). Accordingly the burden shifted back to the Hendersons to produce evidence sufficient to raise an issue of fact as to Georgia Henderson's negligence or to show that her negligence resulted from the defendant's actions or conditions under the defendant's control. *Brown*, 285 Ga. at 444-445 (2).

(c) When construed in her favor, however, Georgia Henderson's testimony shows that at the time of her fall the entire area between her car and the bushes was covered with pine straw, leaving her with no choice of whether to walk on the pine straw to get to the church entrance from the parking spot. Accordingly, the Hendersons raised an issue of fact for the jury as to whether Georgia Henderson chose to step onto the pine straw rather than remain on a safer path in her attempt to proceed to the church.

St. Paul's also appears to argue that the decision by the Hendersons to park next to the church rather than across the street as they had always done in the past when visiting St. Paul's amounted to a deviation from the known safe path to the entrance to the church. But the Hendersons presented evidence that Pastor Lee, who had invited the Hendersons to the church and was aware of the trench and the fact that it was hidden, directed the Hendersons to park along the bushes behind his car yet failed to

8

warn them of the hazard. Thus, there is also a question of fact as to whether any negligence by Georgia Henderson resulted from St. Paul's own actions. See *Brown*, 285 Ga. at 444-445 (2) (plaintiff may create issue of fact regarding her own negligence by presenting evidence that "tends to show that any such negligence resulted from the defendant's own actions or conditions under the defendant's control").

The case of *Mac Intl.-Savannah Hotel v. Hallman*, 265 Ga. App. 727 (595 SE2d 577) (2004), supports our decision. In *Hallman*, a hotel guest returning from dinner in the dark chose to use uneven hotel stairs in a "shadowy area" without holding the handrail, which stairs actually lead to a door marked "Exit only. Do not Enter," thereby enticing the guest to climb the uneven stairs to read the sign and having to descend the same stairs, where she fell and was injured. Id. at 727. This Court held that the plaintiff did not "voluntarily depart from the route designated and maintained by the owner/occupier for the invitee's safety and convenience" because "the hotel set the stage for the injury by failing to illuminate the doorway, by posting a sign that could not be read from the sidewalk, and by maintaining uneven steps that could not be seen clearly, paired with overgrown handrails that were too low." Id. at 729-730 (3) (punctuation omitted). Similarly, in this case there is some evidence that St. Paul

9

set the stage for this accident when Lee directed the Hendersons to park next to the hazardous trench which was covered with pine straw. Id.

For the above reasons, we reverse.

*Judgment reversed. Barnes, P. J., and Boggs, J., concur*.

10