**SECOND DIVISION**
**MILLER, P. J.,**
**MERCIER and COOMER, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

***DEADLINES ARE NO LONGER TOLLED IN THIS COURT.  ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.***

**October 7, 2020**

# In the Court of Appeals of Georgia

A20A1034. DUPREE et al. v. HOUSTON COUNTY BOARD OF EDUCATION et al.

MILLER, Presiding Judge.

Ny'Tia Dupree slipped and fell on a wet staircase while exiting a Houston County School District bus. Sonya Dupree, both individually and as the next friend of Ny'Tia,[1] appeals from the trial court's grant of summary judgment to the Houston County Board of Education. The appellants argue that (1) there are genuine issues of material fact as to whether the Board of Education possessed superior knowledge of the hazardous condition and as to Ny'Tia's knowledge of the hazard; (2) the trial court erred in finding that no hazard existed; and (3) the hazard in this case was not a static defect and therefore Ny'Tia's previous traversal of the hazard is immaterial.

---

[1] Sonya Dupree is Ny'Tia's mother.

Our review of the record reveals genuine issues of material fact which preclude the grant of summary judgment on the appellants' negligence claim, and we therefore affirm in part and reverse in part.[2]

> A de novo standard of review applies to an appeal from a grant or denial of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant. To prevail at summary judgment, the moving party must demonstrate that there are no genuine issues of any material fact and that the undisputed facts, viewed in the light most favorable to the nonmoving party, support judgment as a matter of law. A defendant may do this by showing the court that the documents, affidavits, depositions and other evidence in the record reveal that there is no evidence sufficient to create a jury issue on at least one essential element of plaintiff's case.

(Citations and punctuation omitted.) *Season All Flower Shop, Inc. v. Rorie*, 323 Ga. App. 529, 529-530 (746 SE2d 634) (2013).

Viewed in the light most favorable to the appellants, the evidence showed that in November 2015, Ny'Tia was a student at Warner Robins High School. She was aboard bus no. 1309, traveling from the career center at her school to attend the

---

[2] The appellants also asserted a claim for negligent hiring and retention but they do not challenge the trial court's grant of summary judgment on that specific claim. See *Leo v. Waffle House, Inc.*, 298 Ga. App. 838, 840, n.3 (681 SE2d 258) (2009).

remainder of her classes. Ny'Tia testified that, as she was exiting the bus, "there was a lot of water on the second step due to the rain." She explained that the weather had been rainy all day and that there was so much water on the second step that if a person stepped in it, a splash would result. At the time, she wore flat sneakers, but she was not holding onto the handrail. While exiting, Ny'Tia's left foot slipped, and she fell onto the ground below and broke her ankle.

The bus driver of bus no. 1309, Kevin Littles, testified that he has pre-trip and post-trip checklists, through which he verifies that the lights, bus doors, signals, stop-bar, crossing gate, and windshield wipers are working and that the fluids are adequate. Littles explained that he had been trained in keeping the aisle clear, but he could not recall being trained on warning students about hazards on the bus. According to Littles' testimony, it also appears that the Board of Education did not have any mandatory procedures for bus drivers to follow in the event that rain falls, causing water to enter the bus. Littles occasionally has paper towels on the bus, and he also keeps a broom onboard.

Littles did not see Ny'Tia fall but recalled that the incident occurred on a day that was wet "[o]ff and on." From his vantage point in the driver's seat, Littles could see the second step of the staircase. Littles is trained to "call in" any injuries that

students suffer on the bus, and, after Ny'Tia's fall, he contacted the campus resource office for assistance. No other students fell on the bus steps that day, reported puddles on the steps, or complained that the steps were slippery. Littles testified that he had seen the steps of bus no. 1309 wet "[f]rom time to time" due to heavy rain and that such dripping can result if there is inadequate sealing at the top of the bus. Littles, however, did not observe any puddles on the bus that day and did not have difficulty navigating the steps. An engineer familiar with similar buses averred that the step treads have groves which help mitigate water accumulation and allow water to drain to the lower step or out of the bus.

The appellants filed suit against the Board of Education and John Does Nos. 1-10,[3] claiming that the Board of Education was negligent by failing to inspect and discover the existence of a hazardous condition, failing to remove, remedy, and provide sufficient warning of the hazard, and by hiring and retaining an unsafe driver. The appellants asserted that the Board of Education was directly liable and vicariously liable under the theory of respondeat superior and requested damages for past and future medical expenses, pain and suffering, and lost wages. The Board of

---

[3] Per the complaint, John Does Nos. 1-10 referred to the driver of the bus and "employee and/or agent" of the Board of Education.

Education filed a motion for summary judgment, arguing that if a hazard in fact existed, it was clearly known and visible to Ny'Tia, but she did not use the handrail. The Board of Education also argued that the appellants failed to present evidence that Littles was negligent or incompetent or that the Board of Education knew of any such negligence or incompetence.

After a hearing, the trial court granted the Board of Education's motion for summary judgment. The trial court determined that (1) the appellants had not identified any evidence that the Board of Education had superior knowledge of a dangerous condition; (2) because 30 to 35 students had disembarked the bus before Ny'Tia and none had slipped, fallen, complained, or given notice of a hazardous condition, the appellants had not shown that Littles had the opportunity or means to discover and remove the hazard; (3) Ny'Tia had not used ordinary care for her own safety because she failed to use the handrail to traverse the steps; (4) the appellants had not identified any defect in the bus or evidence that Littles and the Board of Education failed to use reasonable care in inspecting the bus; and (5) there was no evidence in the record pertaining to negligent hiring and retention. This appeal followed.

1. First, Dupree argues that the trial court erred in granting summary judgment because fact issues persist as to whether the Board of Education possessed superior knowledge of the hazardous conditions and as to whether Ny'Tia lacked knowledge of the hazard despite exercising ordinary care.

> Premises liability lies at the intersection of tort law and property law. To recover on a theory of premises liability, a plaintiff must show injury caused by a hazard on an owner or occupier of land's premises or approaches that the owner or occupier should have removed in the exercise of ordinary care for the safety of the invited public. When a premises liability cause of action is based on a "trip and fall" or "slip and fall" claim — and the lion's share of premises liability cases are — we have refined this general test down to two specific elements. The plaintiff must plead and prove that: (1) the defendant had actual or constructive knowledge of the hazard; and (2) the plaintiff, despite exercising ordinary care for his or her own personal safety, lacked knowledge of the hazard due to the defendant's actions or to conditions under the defendant's control.

(Citation omitted.) *Pipkin v. Azalealand Nursing Home, Inc.*, 339 Ga. App. 390, 392 (793 SE2d 568) (2016).[4] We are also aware of the

---

[4] In slip and fall cases involving board of education defendants, we have employed principles applicable to business entity premises owners. See, e.g., *Spivey v. Bd. of Ed. of Savannah & Chatham County*, 194 Ga. App. 726 (391 SE2d 783) (1990).

shifting burdens imposed on the parties in connection with a motion for summary judgment: To survive a motion for summary judgment, a plaintiff must come forward with evidence that, viewed in the most favorable light, would enable a rational trier of fact to find that the defendant had actual or constructive knowledge of the hazard. At that point, the burden of production shifts to the defendant to produce evidence that the plaintiff's injury was caused by his or her own voluntary negligence (intentional disregard of a known risk) or causal negligence (failure to exercise ordinary care for one's personal safety). If the defendant succeeds in doing so, the burden of production shifts back to the plaintiff to come forward with evidence that creates a genuine dispute of fact on the question of voluntary or causal negligence by the plaintiff or tends to show that any such negligence resulted from the defendant's own actions or conditions under the defendant's control.

(Citation and punctuation omitted.) *Henderson v. St. Paul Baptist Church*, 328 Ga. App. 123, 125 (761 SE2d 533) (2014).

*(a) Actual/Constructive Knowledge*

The appellants do not contend that the Board of Education had actual knowledge of the hazard and instead argue that they presented evidence that constructive knowledge could be imputed to the Board of Education. They assert that Littles was in the immediate area of the hazard and could have easily discovered and removed it and that the Board of Education lacked inspection policies and procedures

7

that would have led to the discovery of the hazard. We agree that the appellants presented sufficient evidence to enable a rational trier of fact to find that the Board of Education possessed constructive knowledge of the accumulated water, and the trial court erred in ruling otherwise.

> Constructive knowledge can be established in one of two ways: (1) by evidence that employees were in the immediate vicinity and easily could have noticed and removed the hazard, or (2) by evidence that the substance had been on the floor for such a time that (a) it would have been discovered had the proprietor exercised reasonable care in inspecting its premises, and (b) upon being discovered, it would have been cleaned up had the proprietor exercised reasonable care in its method of cleaning its premises.

(Citation omitted.) *Prescott v. Colonial Properties Trust, Inc.*, 283 Ga. App. 753, 755 (1) (642 SE2d 425) (2007). In the trial court, the appellants cited to Littles' testimony that, from where he sits while driving the bus, he can see down to the second step of the staircase and that he keeps a broom onboard the bus. Additionally, Littles drove the same bus "all day long." A jury could find that Littles was in the immediate area of the hazard and easily could have noticed and removed water that had puddled on the step by using the broom. Therefore, the appellants produced evidence that would enable a rational trier of fact to find that the Board of Education had constructive

8

knowledge of the hazard. *Brown v. Wal-Mart Stores, Inc.*, 294 Ga. App. 424, 426 (669 SE2d 221) (2008) (genuine issue of material fact over whether Wal-Mart employees were in the immediate vicinity and had the opportunity and means to discover and remove shrink wrap left in the aisle of the store); *Dix v. Kroger Co.*, 257 Ga. App. 19, 21 (570 SE2d 89) (2002) (fact issue existed as to constructive knowledge because although the plaintiff testified that she did not know how long the grape had been on the floor before her fall, the manager and two other employees were in the immediate vicinity and could easily have removed the hazard had they seen it); *Kroger Co. v. Brooks*, 231 Ga. App. 650, 654 (1) (a) (500 SE2d 391) (1998) (although plaintiff did not know how long the mousse had been on the floor prior to her fall, fact issue existed as to whether the manager and cashier were in the immediate vicinity and in a position to see the mousse on the floor at various times between in a three-and-a-half-hour period). "The burden of production therefore shifted to [the Board of Education] to produce evidence that [Ny'Tia's] injury was caused by . . . her own voluntary or causal negligence." *Henderson*, supra, 328 Ga. App. at 126 (a).

As it did in its motion for summary judgment, the Board of Education argues on appeal that although Ny'Tia testified that it had been raining all day, she admitted

to not holding onto the handrail as she descended the stairs. The Board of Education therefore counters that Ny'Tia was fully aware of the wet conditions and failed to take reasonable care for her own safety by using the handrail on the bus. Given that the Board of Education produced some evidence supporting the theory that the injury was caused by Ny'Tia's negligence, "the burden shifted back to [Dupree] to produce evidence sufficient to raise an issue of fact as to [Ny'Tia's] negligence or to show that her negligence resulted from the defendant's actions or conditions under the defendant's control." *Henderson*, supra, 328 Ga. App. at 126 (b).

We agree with the appellants that Ny'Tia's failure to use the handrail does not place this appeal alongside the rare cases in which the plaintiff was negligent as a matter of law. "The general rule is that issues of negligence are not appropriate for summary adjudication except in plain and palpable cases where reasonable minds could not disagree." *Stone v. Winn Dixie Stores, Inc.*, 212 Ga. App. 291, 292 (442 SE2d 1) (1994). Littles testified that the steps are sealed from the outside by the doors of the bus. While Ny'Tia was aware that it had been raining all day, she was wearing flat sneakers, and there is no suggestion that she was hurrying to exit the bus. She waited for the students in front of her to disembark, and when it was her turn to exit, she stepped onto both the first and second steps before she fell. And, even assuming

10

that Ny'Tia did not look down as she descended the stairs, "an invitee's failure to exercise ordinary care is not established as a matter of law by the invitee's admission that [s]he did not look at the site on which [s]he placed h[er] foot. . . ." (Citation omitted.) *Augusta Country Club, Inc. v. Blake*, 280 Ga. App. 650, 652 (1) (634 SE2d 812) (2006). "Taking into account all the circumstances existing at the time and place of [Ny'Tia's injury], and construing the evidence in favor of [the appellants], we cannot say that the evidence of [Ny'Tia's] alleged . . . negligence is plain, palpable and undisputed." *Johnson St. Properties, LLC v. Clure*, 302 Ga. 51, 57 (1) (a) (iii) (805 SE2d 60) (2017).

The Board of Education points us to our decision in *Brownlow v. Six Flags Over Georgia, Inc.*, 172 Ga. App. 242 (322 SE2d 548) (1984). In that case, the plaintiff slipped on an exit ramp after leaving a raft ride. Id. at 243. She did not hold onto a handrail along the ramp, despite her knowledge that water was dripping off patrons as they exited the rafts. Id. We held that the plaintiff was aware of the prevailing wet conditions but did not exercise due care. Id. Crucially, however, *Brownlow* was decided in 1984, before the Supreme Court of Georgia's "seminal 1997 decision in *Robinson v. Kroger Co.*"[5] *American Multi-Cinema, Inc. v. Brown*,

___

[5] 268 Ga. 735 (493 SE2d 403) (1997).

285 Ga. 442, 444 (2) (679 SE2d 25) (2009). The *Robinson* decision represented a "course correction" that the Supreme Court implemented after "it became a rarity for a 'slip and fall' or 'trip and fall' case to survive a defendant's motion for summary judgment." Id. Specifically, the decision in *Robinson* "adjusted the burdens of production on summary judgment to more accurately reflect the doctrinal underpinnings of premises liability theory and to restore the jury to its rightful role in elaborating the content of [an owner's] duty of care to the invited public." Id. We were admonished then that

> the "routine" issues of premises liability, i.e., the negligence of the defendant and the plaintiff, and the plaintiff's lack of ordinary care for personal safety are generally not susceptible of summary adjudication, and that summary judgment is granted only when the evidence is plain, palpable, and undisputed.

(Citation omitted.) Id. at 445 (2). Since *Robinson*, the Supreme Court has stated, even more concretely, that issues such as "how vigilant patrons must be for their own safety in various settings, and where customers should be held responsible for looking or not looking are all questions that, in general, *must be answered by juries as a matter of fact* rather than by judges as a matter of law." (Emphasis supplied.) Id.

12

Accordingly, we determine that a jury should decide whether Ny'Tia's failure to use the handrail precludes recovery.

*(b) Superior Knowledge*

The second prong in the test for premises liability cases "is predicated . . . upon the relative knowledge of the respective parties as to the condition or hazard which caused the injuries." *Wallace v. Nissan of Union City, Inc.*, 240 Ga. App. 658, 659-660 (1) (524 SE2d 542) (1999). "Because a plaintiff cannot recover in a premises liability suit unless the defendant had superior knowledge of the hazard, the defendant is entitled to summary judgment if there is no evidence that it had superior knowledge or the undisputed evidence demonstrates that the plaintiff's knowledge of the hazard was equal to or greater than that of the defendant." *Norman v. Jones Lang Lasalle Americas, Inc.*, 277 Ga. App. 621, 624 (627 SE2d 382) (2006). We conclude that there is a fact issue regarding the relative knowledge of the parties.

A close review of the record reveals no evidence that Ny'Tia knew about the water before she stepped into it. We recognize that she testified that there was more water on the second step than on the first step. She was never asked during the deposition, however, whether she saw the water *before* she began descending the steps or only became aware of its presence as or after she fell. Additionally, she

13

testified that Littles should have told her about the amount of water on the step.[6] And, as discussed above, the appellants provided sufficient evidence raising a fact issue regarding the Board of Education's constructive knowledge of the hazard. Thus, we cannot hold that the undisputed evidence shows that Ny'Tia's knowledge of the hazard was equal to or greater than that of the Board of Education or that there is no evidence that the Board of Education lacked superior knowledge. Accordingly, to the extent that the trial court granted summary judgment on the basis that the Board of Education had no superior knowledge of the hazard, that determination cannot be made as a matter of law, and we reverse that ruling. See *Dumas v. Tripps of North Carolina, Inc.*, 229 Ga. App. 814, 815-816 (1) - (2) (495 SE2d 129) (1997) (summary judgment precluded where fact questions existed concerning whether the defendant had constructive knowledge of the ice which caused the plaintiff's fall and as to whether the plaintiff had superior or equal knowledge of the ice).

---

[6] As addressed previously, fact issues also exist regarding Ny'Tia's exercise of ordinary care.

2. Next, Dupree argues that the trial court erred in determining that no hazard existed.[7] Because there exists a jury question regarding the existence of a hazard, we agree.

We have acknowledged that in rainy day slip-and-fall cases, "water is apt to be found in any area frequented by people coming in from the rain outside." *Hayward v. Kroger Co.*, 317 Ga. App. 795, 800 (3) (b) (733 SE2d 7) (2012). See also *Roberts v. Outback Steakhouse of Florida, Inc.*, 283 Ga. App. 269, 270 (641 SE2d 253) (2007) ("[T]he *normal* accumulation of water at the entrance of a business during a rainy day is not an unreasonable hazard."). "If, however, the risk is abnormal, such as an unusual accumulation of water, the owner/occupier may be liable for failing to alleviate the condition." Id.

Here, Ny'Tia testified that there was "a lot of water" on the second step — moreso than on the first — and that enough water had pooled such that a splash would result when stepping in it. Accordingly, the question of whether there was a hazard should be decided by a jury. See *Smith v. Toys R Us, Inc.*, 233 Ga. App. 188,

---

[7] We address this enumeration of error insofar as the trial court found that there was no defect on the bus.

15

189 (504 SE2d 31) (1998) (one-inch deep puddle that "splashed" as plaintiff stepped in it could be a hazardous condition, even at store entrance on rainy day).

The Board of Education contends that there is no credible evidence of an unusual accumulation of water because the only evidence to this effect was Ny'Tia's testimony. The inherent flaw in this argument is that it subverts the standard of review on summary judgment, which mandates that we view the evidence in the light most favorable to the appellants as the non-movants. In other words, "the question of whether to believe [Ny'Tia] or the other witnesses is one of credibility. Where credibility is the controlling question, summary judgment is not appropriate." *Stephens v. Adkins*, 226 Ga. App. 648, 649 (2) (c) (487 SE2d 440) (1997).

3. Lastly, the appellants argue that the hazard was not a static defect and it is immaterial that Ny'Tia previously traversed the stairs. We decline to address this argument, however, because the trial court did not grant summary judgment on this basis. See *Williams v. United Community Bank*, 313 Ga. App. 706, 707-708 (722 SE2d 440) (2012).

As to the appellants' negligence claim, this case presents genuine issues of material fact to be resolved by a jury, and we reverse the trial court's grant of summary judgment as to that claim.

16

*Judgment affirmed in part and reversed in part. Mercier and Coomer, JJ.,*

*concur.*