**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**BROWN and MARKLE, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**September 22, 2023**

# In the Court of Appeals of Georgia

A23A1192. P&D OLE TIMES, LLC v. McCRAY.

BROWN, Judge.

Tyrone McCray filed suit against P&D Ole Times, LLC ("Ole Times") to recover damages that he allegedly sustained when he slipped and fell on paper towels in the bathroom of an Ole Times restaurant. Ole Times filed a motion for summary judgment, which the trial court denied. We granted Ole Times' application for interlocutory appeal to review the trial court's decision. On appeal, Ole Times contends that the trial court erred in denying summary judgment in its favor because the undisputed evidence shows that McCray had equal or superior knowledge of the alleged hazardous condition and failed to exercise ordinary care for his own safety. We agree and reverse.

Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). A de novo standard of review applies to an appeal from a grant or denial of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.[1]

---

[1] While this well-established standard of review for summary judgment cases has been applied for decades, *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991), a recent concurral written by Justice Bethel, in which Chief Justice Boggs and Justices Warren and LaGrua joined, calls the continued adherence of this standard of review into question. See *Phung v. Hart*, 316 Ga. 361 (887 SE2d 291) (2023). Justice Bethel states in his concurral that this Court's view of the record in *Hart v. Phung*, 364 Ga. App. 399 (876 SE2d 1) (2022), "appears to be clearly erroneous" because the "Court of Appeals[ ] use[d] . . . [deposition testimony], out of context and in isolation, to overturn the trial court's grant of summary judgment." *Phung*, 316 Ga. at 363. These four justices concluded, in essence, that the deposition testimony should have been construed in favor of the movant rather than the nonmovant. Compare *Fulton County v. Ward-Poag*, 310 Ga. 289, 300 (2) (c), n.8 (849 SE2d 465) (2020) (pointing out that dissent improperly focused on evidence it construed against the nonmovant). This construction of the evidence and conclusion would be correct under a clearly erroneous standard of review as it requires the reviewing court to construe the evidence most favorably to upholding the *trial court's* findings and judgments. *Hunt v. Callahan*, 353 Ga. App. 488, 489 (3) (838 SE2d 133) (2020). Adoption of a clearly erroneous standard of review for another appellate court's decision in a summary judgment case would represent a major shift in longstanding precedent for the standard of review of summary judgment cases on appeal. See *Cowart v. Widener*, 287 Ga. 622, 623 (1) (a) (697 SE2d 779) (2010) ("The standards for reviewing summary judgments are settled."). For now, five justices have not yet taken Justice Bethel's novel approach.

(Citation and punctuation omitted.) *Ingles Markets v. Seymour*, 356 Ga. App. 889 (849 SE2d 715) (2020). So viewed, the record shows that in February 2020, McCray visited an Ole Times restaurant. He had been there for about 30 minutes when he got up to use the restroom. When he opened the door and entered the restroom, McCray noticed that the trash can was overflowing with paper towels and that "more than a few [paper towels] were on the floor." McCray did not know whether the paper towels on the ground were wet or dry, but deposed that they were "[p]robably . . . a combination of the two." After using the restroom and washing his hands, McCray walked toward the door to leave. When he opened the door to exit, he slipped and fell, hitting his shoulder on the door. As he tried to get up, he slipped and fell again. As he was getting up, McCray again noticed that the trash can was overflowing with used paper towels, and he "believ[ed]" that he had slipped "on a piece of one of those paper towels." McCray acknowledged that the condition on the floor at that time he fell was the same as when he entered the restroom. He did not believe that his leather-bottomed "church shoes" or the surface of the restroom floor contributed to his fall. When he got up, McCray did not notice any water or moisture on any part of his body or his clothes, and he did not feel water or moisture anywhere.

3

Photographs of the restroom were used during McCray's deposition to determine the area of the restroom where he fell and the location of the trash can and overflowing paper towels.[2] One photograph taken from just outside the restroom door depicts a trash can inside the restroom on the right of the restroom door placed in the corner of the exterior wall of the bathroom and a short perpendicular interior wall. The door opens into the restroom and toward a wall on the immediate left, which would have provided an ever-expanding view of the trash can area as the door is opened. McCray was shown a photograph taken from inside the bathroom, looking out toward the door, and asked to describe exactly where the paper towels were located on the ground. He deposed as follows: "If you see in the area right as you're walking into the door right to — come back over with your mouse . . . [t]owards the trash can . . . right in there going out the door." He then agreed with counsel's description of this area as "looking at the left side of the picture, it's the area of about the third and fourth tile over and the first and second tile from the wall." The photographs show that the width of the door into the bathroom was almost five tiles

_____

[2] These photographs appear to have been taken at a different time as no overflowing paper towels are shown in them.

4

wide and, based on McCray's description of the location of the paper towels, at least three quarters of the width of the doorway would have been clear of paper towels.

McCray subsequently brought this premises liability action against Ole Times. After deposing McCray, Ole Times moved for summary judgment. Following a hearing, the trial court denied the motion, ruling that a genuine issue of fact remained as to whether McCray exercised ordinary care in intentionally exposing himself to a hazard of which he knew or, in the exercise of ordinary care, should have known. This appeal followed.

"An owner or occupier of land must exercise ordinary care to keep his premises safe for invitees." *Houston v. Wal-Mart Stores East*, 324 Ga. App. 105, 107 (1) (749 SE2d 400) (2013), citing OCGA § 51-3-1. "On the other hand, an owner or occupier of land is not an insurer of the safety of its invitees. The mere occurrence of an injury does not create a presumption of negligence." (Citation and punctuation omitted.) *Kennestone Hosp. v. Harris*, 285 Ga. App. 393, 394 (646 SE2d 490) (2007).

> To recover damages for injuries sustained in a slip-and-fall action, an invitee must prove (1) that the defendant had actual or constructive knowledge of the hazard; and (2) that the plaintiff lacked knowledge of the hazard despite the exercise of ordinary care due to actions or conditions within the control of the owner/occupier.

(Citation and punctuation omitted.) *Williams Investment Co. v. Girardot*, 354 Ga. App. 762, 763 (841 SE2d 436) (2020).

> [T]he plaintiff's evidentiary burden concerning the second prong[, however,] is not shouldered until the owner establishes that the plaintiff was negligent, that is, she intentionally and unreasonably exposed herself to a hazard of which she knew or, in the exercise of reasonable care, should have known existed. With respect to the second prong, we determine whether the record shows plainly, palpably, and without dispute that plaintiff had knowledge of the hazard equal or superior to that of defendants or would have had equal or superior knowledge had the plaintiff exercised ordinary care for personal safety.

(Citation and punctuation omitted.) *Houston*, 324 Ga. App. at 107 (1).

Ole Times does not dispute that it had constructive knowledge of the hazard because it cannot show compliance with a reasonable inspection procedure. Thus, Ole Times bears the burden of showing that McCray intentionally disregarded a known risk or failed to exercise ordinary care for his personal safety. See *Henderson v. St. Paul Baptist Church*, 328 Ga. App. 123, 125 (a), 126 (761 SE2d 533) (2014).

Relying on *Houston* and *Martin v. Consolidated Stores Corp.*, 248 Ga. App. 812 (547 SE2d 380) (2001), Ole Times argues that McCray's claims against it must fail because he cannot show that, despite Ole Times' constructive knowledge of the

6

hazard, he lacked knowledge of the hazard. According to Ole Times, the paper towels on the floor were an open and obvious condition which McCray admittedly saw and negotiated prior to his fall. Ole Times asserts that McCray saw the hazard and could have left and sought the help of an employee, but chose to proceed through the hazard, successfully at first. McCray counters that he became aware of the hazardous condition which consisted of an accumulation of water and paper towels only after already finding himself standing in the midst of it and that he had "no way to avoid it upon entering or leaving the restroom." We agree with Ole Times and find this case factually similar to and controlled by *Martin*.

In *Martin*, the plaintiff had been shopping at a Big Lots when he decided to use the restroom. 248 Ga. App. at 813. When he entered the restroom, he observed water pouring out of a urinal and onto the floor. Id. He walked through an inch of standing water to enter a stall. Id. After exiting the stall, he walked toward the door and fell just as he reached it. Id. The plaintiff testified that he did not see any water or hear the urinal running until he entered the restroom. Id. This Court affirmed the grant of summary judgment to the defendant on the second prong, concluding that the plaintiff failed to exercise ordinary care for his own safety:

The customer must exercise ordinary care for his own safety, and must by the same degree of care avoid the effect of the merchant's negligence after it becomes apparent to him or in the exercise of ordinary care he should have learned of it. A customer exercises ordinary care when he uses all senses to discover and avoid hurtful things. The established standard is whether, taking everything into account, the act is one which the common sense of mankind pronounces wants of such prudence as the ordinarily careful person would use in a like situation.

(Citations and punctuation omitted.) Id. In that case, the plaintiff purposefully walked through inch-high water, while more water was pouring from the urinal, and he never asked a store employee to mop the floor. Id. at 814.

McCray claims that this case is distinguishable from *Martin* because unlike that case, here, the hazard "presented itself immediately at the base of the door" and "McCray did not have the opportunity to first see the hazard, appreciate the hazard or weigh the option of traversing the hazard." McCray argues that, unlike the plaintiff in *Martin*, he was unaware of what was behind the door of the restroom until he walked inside and the "latent trap had already sprung," confining him inside the hazardous restroom. The record does not support McCray's argument.

McCray's deposition testimony establishes that when he opened the door to the restroom, he saw the paper towels overflowing the trash can that were located on the

8

floor of the right side of the doorway into the restroom. The paper towels on the floor did not span across the entire doorway into the bathroom. He successfully navigated his way through or around the paper towels on his way into the restroom, and the condition was the same when he walked out. Given that the door to the restroom opened inward into the restroom itself, there was nothing stopping McCray from seeing the paper towels on the floor before he entered the restroom and notifying an Ole Times employee of the situation. Finally, that McCray did not notice any water or moisture on any part of his body or his clothes and did not feel water or moisture anywhere, contradicts any claim that his path into the restroom was "compromised" by an accumulation of paper towels and *water*. "While . . . routine issues of premises liability, i.e., the negligence of the defendant and the plaintiff, and the plaintiff's lack of ordinary care for personal safety are generally not susceptible of summary adjudication, this is one of those cases in which the evidence is plain and palpable that [McCray] failed to exercise ordinary care for his own safety." (Citation and punctuation omitted.) *Martin*, 248 Ga. App. at 814.

*Judgment reversed. McFadden, P. J., concurs specially. Markle, J., concurs in judgment only.*

A23A1192. P & D OLE TIMES, LLC v. McCRAY.

MCFADDEN, Presiding Judge, concurring specially.

I concur fully in the majority opinion, with the exception of footnote 1, which responds to the separate writing in *Phung v. Hart*, 316 Ga. 361, 363 (887 SE2d 291) (2023) (Bethel, J., concurring in the denial of certiorari). I do not read that concurral to call into question the existing standards in summary judgment cases. It just misapplies those standards and misreads our opinion. For that reason, and that reason only, I concur specially in footnote 1.

In that concurral, four members of our Supreme Court admonished this court to "exercise greater care in its review of the records it reviews." Id. The four justices expressed "grave concern that the Court of Appeals' mischaracterization of the record here likely resulted in the erroneous disposition of an enumeration[,]" id. at 362, and concluded that we had rendered an opinion that was "clearly erroneous." Id. at 363.

An admonition from our Supreme Court to this court is a serious matter. So, although I did not participate in *Phung*, I have given the concurral careful consideration. It is unpersuasive.

*Phung* was a personal injury case arising from a collision between an automobile and a pedestrian, Ashley Hart. Hart was in a lane of traffic on a divided highway. A man who was apparently attempting to cross with her was in an adjoining lane on the same side of the highway. The driver of the automobile, Thanh Tan Phung, saw him. At issue was whether Phung also saw Hart before hitting her.

Phung testified repeatedly that he did not. But on one occasion he testified that, before the collision, "I saw them." We found that to be some evidence that he saw her. On that basis we reversed summary judgment. *Hart v. Phung*, 364 Ga. App. 399, 407 (2) (876 SE2d 1) (2022). The concurral said that this was error because, "Phung unequivocally and consistently states numerous times throughout his deposition that he never saw Hart in the lane before the impact." *Phung v. Hart*, 316 Ga. at 362.

In the first place, and contrary to the concurral's assertion, we did not mischaracterize the record. If, in reviewing our opinion, the justices had done what they admonished this court to do — "exercise greater care in [their] review" — they would have recognized that we wrote, "While [Phung] repeatedly stated that he only

2

saw the man, at one point in his deposition, he stated, 'I was in the right lane when I saw *them*.'" *Hart v. Phung*, 364 Ga. App. at 401 (emphasis in original). And in our concluding paragraph, we acknowledged again that, "Phung also testified that he never saw Hart before hitting her[.]" Id. at 407 (2).

So I turn to the concurral's declaration that our opinion was "clearly erroneous" because we "incorrectly applie[d]" the law. *Phung v. Hart*, supra at 363. Again I disagree.

The concurral observes that, in two questions, which appear on the deposition page preceding the one on which Phung's use of "them" appears, plaintiff's counsel "referred to the man waving in the plural." Id. at 362. Counsel referred to him as "them" in one question and "mention[ed] 'their clothes, their face, their hands'" in the other. Id. On the basis of that observation, the concurral posits that Phung was echoing counsel's pronoun usage. Perhaps so. But that is for a jury to decide.

It may be, as the concurral posits, that counsel was using the singular "them" and "their," not the plural. The singular "they," "them," and "their" have a long history, and have recently gained popularity. But a difficultly with the singular use of those pronouns is that it can be indistinguishable from the plural use and

3

consequently can create ambiguity. So it was with Phung's use of "them." Phung's counsel could have dispelled that ambiguity. But he did not.

It is true, as the concurral states, that the summary judgment standards call upon courts to review a specific part of a deponent's testimony in the context of his entire deposition. See *MyFamilyDoc v. Johnston*, 366 Ga. App. 459, 462 (1) (883 SE2d 404) (2023). But on the other hand, those standards prohibit courts from weighing the evidence and instead require that courts view the evidence in the light most favorable to the nonmovant. *In the Matter of Tapley*, 308 Ga. 577 (842 SE2d 36) (2020). Under those standards, it is fair to say that *Phung* was a close case. But I hold with our opinion: the deposition testimony was ambiguous. Context is relevant to resolving that ambiguity. But under the circumstances of the case, resolving it is for a jury and not the court.

I depart company with today's majority only in that I do not read the concurral to call into question our long-standing summary judgment standards. See *Cowart v. Widener*, 287 Ga. 622, 623-624 (1) (a) (697 SE2d 779) (2010). In particular I do not read the concurral to import the clearly erroneous standard into summary judgment law. That would indeed be remarkable  See generally *Florida Int. Univ. Bd. of Trustees v. Florida Nat. Univ., Inc.*, 830 F.3d 1242, 1251 (II) (11th Cir. 2016)

4

(discussing and distinguishing the federal clearly erroneous standard and the summary judgment standards); *Reed v. State*, 291 Ga. 10, 13 (3) (727 SE2d 112) (2012) (Georgia's "clearly erroneous standard for reviewing findings of fact is equivalent to the highly deferential any evidence test.") (punctuation omitted). But I take the concurral's use of "clearly erroneous" in characterizing our opinion to be merely imprecise.